## PROVIDENCE.

---

## THOMAS WILSON *vs.* NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

The Judiciary Act, cap. 15, § 4, authorizing the court at any time to permit parties "to amend any defect in the process or pleading," is merely declarative of a rule which has always been practised, here and elsewhere, that the court, in its discretion, may permit amendments even in matters of substance which do not go to the length of changing the form of action or introducing a new or different cause of action.

The court may properly permit a plaintiff in an action for negligence resulting in personal injury, to amend his declaration so as to correct errors as to date and place, and so as to set forth with more particularity the matters constituting the defendant's negligence.

Reading to a witness his testimony given at another trial is equivalent to asking him a leading question. It may be allowed under circumstances which rest in the sound discretion of the court, and affords no ground for a new trial unless the discretion of the court is abused and a substantial injury has been done.

The testimony of a witness who is not an expert in the matter of driving horses, that on a particular occasion a driver "had his horses under pretty good control, and he seemed to drive carefully," is not objectionable on the ground that the witness is not an expert, for the first part of the testimony is matter of fact rather than opinion, and the rest of it, though matter of opinion, does not call for expert opinion

A railroad company, by force of a public statute, was required to place a flagman at one of its crossings, under an order of a town council declaring that it is necessary for the safety of the public that the company "shall cause a flagman to be placed on said crossing ;"

*Held*, that the construction of the order was for the court, not for the jury.

*Held*, further, that as the order specified no time during which a flagman must be kept at the crossing, it required one to be kept there at all times day or night when trains were liable to pass.

A sleigh in which the plaintiff was a passenger was struck by a train while crossing the track in the night time, and the plaintiff was injured. The gates were open and no flagman was there. The plaintiff, though aware that there was a crossing in the neighborhood, did not know of its immediate proximity, and did not hear, although he was listening, any signals of an approaching train.

*Held*, that the fact that the gates were open and unattended was evidence of negligence on the part of the railroad company.

*Held*, further, that the question of contributory negligence was properly left to the jury.

An amended declaration eliminates the original one from the trial. Special issues based on allegations contained in the original but not in the amended declaration are immaterial.

DEFENDANT'S petition for a new trial.

This is an action of trespass on the case for personal injuries alleged to have been caused by the defendant's negligence in running one of its trains into a sleigh in which the plaintiff and others were riding while crossing the track on a public highway in the night time.

*May* 26, 1894.   MATTESON, C. J.   The defendant petitions for a new trial on several grounds :

*First :*—Because the court permitted the plaintiff against the defendant's objection, to file an amended declaration.

It contends that the amendment was not in a matter of form but of substance; and that the Judiciary Act, cap. 15, § 4, authorizes amendments in matters of form only. We do not so construe the statute. The language is : "The court may at any time permit either of the parties to amend any defect in the process or pleadings, with or without terms, in the discretion of the court, or in pursuance of general rules." "Any defect" surely is broad enough to include substantial as well as merely formal defects. But this language in the Judiciary Act is merely declarative of a rule which has always been practised here and elsewhere that the court in its discretion may permit amendments, even in matters of substance, which do not go to the length of changing the form of action or introducing a new or different cause of action.   *Guilford* v. *Adams*, 19 Pick. 376 ; *Ross* v. *Bates*,

2 Root, (Conn.) 198 ; *Cooper* v. *Waldron*, 50 Me. 80 ; *Burt* v. *Kenne*, 47 N. H. 361 ; *Sumner* v. *Brown*, 34 Vt. 194 ; *Wright* v. *Hart*, 44 Pa. St. 454 ; *Snyder* v. *Harper*, 24 W. Va. 206 ; *Mahan* v. *Smitheman*, 71 Ala. 563.

The cause of action in the present suit was the alleged negligence of the defendant whereby a collision occurred, at the Lonsdale crossing in the town of Cumberland, on January 18, 1893, between a freight train of the defendant and a sleigh in which the plaintiff was riding. By some inadvertence or mistake, the declaration as originally filed described the accident as having been on March 1, 1893, in the town of Lincoln, instead of on January 18, 1893, in the town of Cumberland. The amended declaration corrects this error, and sets forth with more particularity than in the original declaration the matters in which, it is alleged, the defendant was guilty of negligence, but does not change the form of action or introduce a different cause of action. We are of the opinion that the court properly permitted the amendment.

*Second :*—Because the court, subject to the defendant's exception, permitted the plaintiff's counsel to read to the witness Thomas Schora from his testimony at the trial of another case involving the same subject matter, by which it is alleged the witness was led to give an answer desired by the plaintiff.

Plaintiff's counsel apparently desired to show that the train ran a considerable distance after colliding with the sleigh before it could be stopped, for the purpose of arguing to the jury that the train was running at an unusual or dangerous rate of speed. The witness being asked, "How far past the crossing did the engine and cars go after striking the sleigh," replied, "It was beyond the depot. How far beyond the depot I can't tell." Plaintiff's counsel then asked, "Do you recollect testifying as follows in one of these cases : 'As far as I could judge, it brought up under the archway that comes up there on the Lonsdale road.'" The witness replied, "I believe at that time I was asked if I couldn't judge whereabouts the train had stopped, and I think I said some-

where about the archway." Plaintiff's counsel then said, " I will read a question to you : 'About how far past the crossing did the engine and train go before it stopped,'" to which the witness answered "Yes, sir ; I remember saying that it stopped somewhere either under or by the bridge. Whether it is exactly the words or not I can't say. But I know that it stopped beyond the depot. It must have done so, quite a ways." We think that this method of attempting to put in testimony may properly be criticised ; but as the jury found specially that the train "was not run at an unreasonable rate of speed," it is evident no injury resulted to the defendant.

The reading of testimony to the witness was equivalent to asking him a leading question. While it is true that, as a general rule, leading questions are inadmissible, the rule has its exceptions, resting in the sound discretion of the court. Thus, they are permissible when the witness appears to be hostile to the party producing him, or in the interest of the opposite side, or unwilling to testify, or where an omission in his testimony is evidently caused by a want of recollection which a suggestion may assist. *State* v. *Tracey,* 12 R. I. 216 ; *Moody* v. *Rowell,* 17 Pick. 496 ; 1 Greenleaf on Evidence, § 435. The asking of a leading question, then, being a matter of discretion, unless the discretion is abused and a substantial injury has been done, affords no ground of error or for a new trial. *State* v. *Tracey,* 12 R. I. *supra* ; *Gunter* v. *Watson,* 4 Jones, (N. C.) Law, 455.

*Third :*—Because the witness Ada Young was permitted, against the defendant's objection, to give her opinion as an expert in relation to driving, it not being shown that she had had any experience in driving or the management of horses.

By reference to the record it appears that the witness was asked, "How did he (the driver of the sleigh in which the plaintiff was riding) drive from the time he left Pawtucket until he got to Attleboro', and from Attleboro' until he got to this railroad crossing." The witness answered, "Well, he had his horses under pretty good control and he seemed to drive carefully." We do not think that this testimony was

objectionable.    The statement that the driver had the horses under pretty good control was not so much a matter of opinion as of fact.    The statement that he seemed to drive them carefully, though a matter of opinion, was not necessarily a matter of expert opinion.    In *Commonwealth* v. *Sturtivant*, 117 Mass. 122, the court, after reviewing numerous cases, states its conclusion that common observers, having special opportunities for observation, may testify to their opinions as conclusions of fact, although they are not experts, if the subject matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, and the facts upon which the witness is called to express an opinion are such as men in general are capable of comprehending.    And generally opinions are competent in the classes of cases in which they are the best testimony, as where a mere description without an opinion would generally convey a very imperfect idea of the force, meaning and inherent character of the thing described.    Hence, non-experts may give their opinions on questions of identity, resemblance, apparent condition of body or mind, intoxication, sickness, health and the like.    *State* v. *Pike*, 49 N. H. 399 ; 1 Greenleaf on Evidence, § 440, and notes.

*Fourth :*—Because the court excluded certain testimony respecting orders of the Town Council of Cumberland relating to railroad crossings.    Pub. Laws R. I. cap. 810, § 1, of March 26, 1869, required all railroad corporations whose roads ran through the State to cause flagmen to be placed where railroads crossed public highways whenever in the opinion of the town councils it should be deemed necessary for the safety of the public.    In accordance with this statute the town of Cumberland, on October 2, 1871, on the petition of certain persons, passed the following order :

" It is ordered and decreed by this Council that said petition be received ; and upon consideration and examination of the subject matter and prayer thereof, the said Council do further judge and determine that it is necessary for the safety of the public that the Providence & Worcester Railroad Co. shall cause a flagman to be placed on said crossing

at the Lonsdale station at Lonsdale, and that the clerk of this Council is hereby requested to serve an order on said Providence & Worcester Railroad Co., in accordance with Chapter 810, passed March 26, 1869."

This order was duly served on the Providence & Worcester Railroad Co., the predecessor of the defendant, and has continued in force down to the time of the accident. The railroad company placed a flagman at the crossing between 6 A. M. and 9 o'clock P. M., or until such time as the last passenger train from Worcester had passed over the crossing. The defendant claimed that this was a compliance with the order. The plaintiff, on the other hand, contended that this action was not a compliance with the order, and hence that the defendant was guilty of negligence. The defendant offered testimony to the effect that other orders in substantially the same terms and relating to other crossings in the town had been made, and that flagmen had been placed at such crossings in precisely the same manner as at the crossing in question, without any complaint and without any further order from the town council; that in the case of the Mill Street crossing, long after the original order had been made, the town council, deeming it necessary that a flagman should be stationed there during the whole night, had so ordered, and had also so ordered in relation to the Titus Street crossing, concerning which no previous order had apparently been made, though the railroad company had kept a flagman there for many years. The court excluded the testimony so offered except in those instances in which two orders concerning the same crossing had been passed. Defendant excepted to the ruling.

We are of the opinion that the construction of the order of the town council was a question for the court and not for the jury. As the order specified no time during which a flagman was to be kept at the crossing, we are also of the opinion that the proper construction of it required the railroad companies to keep a flagman at the crossing at all times when trains were liable to pass, whether during the day or during the night. Travelers were liable to be passing over the crossing

during the night as well as by day, and their safety required the presence of a flagman, if trains were to be run during the night, quite as much, owing to the darkness, as during the day. In this view of the case, the exclusion of the testimony worked no injury to the defendant and affords no ground for a new trial.

*Fifth and Sixth :*—Because the court refused to grant certain requests for instruction to the jury : 1. That approaching a crossing without taking means to ascertain if a train is coming is negligence. 2. That a passenger who knows the crossing and has an opportunity of requesting the driver to stop and look and listen and ascertain if a train is coming, and fails to do so, is guilty of negligence. 3. That a passenger in a sleigh or other vehicle is bound to exercise due care irrespective of the driver, and if he fails to do so he is guilty of contributory negligence which will bar recovery. 4. That an attempt to cross over in front of a train so close that one is immediately struck is evidence of negligence.

The court declined to give these instructions and left it to the jury to say, upon the evidence and the instructions given, whether or not the plaintiff was guilty of contributory negligence.

We think that the charge of the court, in view of the evidence, was sufficiently favorable to the defendant. The requests to charge were based on the assumption that the plaintiff knew that the sleigh had approached so near to the crossing that there might be danger from a passing train. The evidence does not show, however, that the plaintiff was familiar with the locality; and, besides, the accident happened in the night when, owing to the darkness, the close proximity of the crossing would not be so readily perceived. The testimony shows merely that the plaintiff knew that there was a crossing in that neighborhood, over which the sleigh must pass, and that he was accordingly listening for the signals of an approaching train. We think that he had a right to rely to some extent on the presumption that the driver, who, standing in the front of the sleigh by the dashboard, would have a better opportunity to see in front of the

sleigh, would exercise due care, there having been nothing in his conduct to give reason to suppose that he was not a careful and prudent driver. As the plaintiff did not know of the immediate proximity of the crossing and did not hear, though he was listening, the signals of the approaching train, we do not think it could be said as a matter of law that he was guilty of contributory negligence because he did not request the driver to stop and look and listen to ascertain whether a train was approaching ; and, if not, the question was properly left to the jury. Moreover, the rule which requires a person who is about to cross a railroad to stop and look and listen for an approaching train is certainly not to be more strictly applied to a passenger in a sleigh than to the driver, if the driver were suing instead of the passenger. The testimony shows that the gates established at the crossing were open at the time of the accident. In *Wilson, Adm'r, v. N. Y., N. H. & H. R. R. Co., ante,* p. 491, we held that open gates or the absence of the usual signals of an approaching train are an implied assurance that no train is approaching with intent to cross the street, upon which travelers have a right to rely, and that if a traveler on the street be injured while crossing a railroad in these circumstances, the question whether he was guilty of contributory negligence is for the jury. So that, even if the driver of the sleigh had been the plaintiff, the question of whether he was guilty of contributory negligence must have been left to the jury.

*Seventh :*—Because the court erred in refusing to charge the jury that open gates are not negligence if other warnings of the approach of the train are given.

We are of the opinion that the court properly refused this request. The fact that the gates were open and unattended was evidence of negligence. *State of Maine* v. *Boston & Maine R. R. Co.,* 80 Me. 430 ; *Whelan* v. *New York, Lake Erie & Western R. R. Co.,* 38 Fed. Rep. 15. To relieve itself from the charge of negligence in leaving the gates open, it was necessary for the defendant to show that the other warnings of the approach of the train were such that the

plaintiff should have heard or perceived them if in the exercise of due care.   The jury were told that closed gates would be but one means of notifying travelers of danger; that if they were notified by the ringing of the bell or by the blowing of the whistle or by their vision or by any other means, that would be sufficient; because if the traveler had notice in any way of the approach of the train it would be contributory negligence for him to cross the track, and it would matter not, that the defendant might have been negligent.

We think this instruction was correct and was sufficiently favorable to the defendant.

The Eighth, Tenth and Thirteenth grounds for a new trial urged in the defendant's brief are disposed of by the construction of the order of the Town Council that the defendant was bound to keep a flagman at the crossing whenever a train was liable to pass.

*Ninth:*—Because the special finding of the jury that the bell was not rung and the whistle was not blown when the train approached the crossing was against the evidence.

That these signals were given was testified to by two witnesses besides the engineer, fireman, conductor, and train men; that they were not heard was testified to by two witnesses who were so situated that they would have been likely to hear the signals had they been given, as well as by the plaintiff and five other persons in the sleigh with him, none of whom heard the signals.   The jury were correctly instructed as to the relative value of positive and negative testimony and after weighing the evidence reached the conclusion that the signals were not given.   It is possible that we might have reached a different conclusion ourselves upon the evidence; but the question was for the jury, and it is not sufficiently clear that their finding was erroneous for the court so to hold.

*Eleventh and Twelfth:*—Because certain special findings of the jury on issues submitted to the defendant were contrary to, or unsupported by the evidence.

The issues on which the findings were returned were wholly immaterial.   The original declaration which alleged

the happening of the accident as on the first day of March, 1893, in the Town of Lincoln was eliminated from the trial by the amended declaration which was filed.   The allegations on which the issues were submitted to the jury and on which the special findings were returned were contained in the original declaration, and not in the amended declaration on which the case was tried.

Defendant's petition for a new trial denied and dismissed with costs, and case remitted to the Common Pleas Division with direction to enter judgment on the verdict.

*George J. West,* for the plaintiff.

*Walter B. Vincent,* for the defendant.