ALFRED GEOFFROY *et al. vs.* N. Y., N. H. & H. R. R. Co.

DECEMBER 5, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, and Stearns, JJ.

*(1)   Railroads.   Open Gates.*

The closing of the gates at a railroad crossing is simply one means of notifying a traveller of danger and the traveller cannot rely exclusively on the fact that the gates are open, but must to some extent use his senses before going on to the railroad track.

*(2)   Railroads.   Open Gates.*

The fact that crossing gates are open is an important fact for consideration in the determination of the question whether due care was exercised by a traveller.   The weight properly to be given to such fact necessarily will vary in different cases and will be affected by different considerations.   If the facts are controverted or if fair-minded men could draw different conclusions from facts which are not controverted the question of contributory negligence would be properly submitted to a jury.

*(3)   Railroads.   Open Gates.   Contributory Negligence.*

In an action for death of plaintiff's intestate caused by a collision at a grade crossing, evidence considered and

*Held,* that as plaintiff had failed to show that deceased was in the exercise of due care, a nonsuit was properly granted.

TRESPASS ON THE CASE for negligence.   Heard on exception of plaintiff and overruled.

STEARNS, J.   This is an action of trespass on the case for negligence brought by the plaintiffs, the heirs and next of kin of one Ephrem Geoffroy, who was killed on the night of December 21, 1917, by a passenger train of the defendant. The accident occurred on the grade crossing in the village of Arctic where River street, a State highway, crosses the railroad at grade.   At this place the railroad, a single track line, runs north and south and River street crosses the railroad at a slight angle from the southwest to northeast. South of the crossing on the west side of the track is the Arctic passenger station, a small wooden building, the center of which is 114 feet from the center of the crossing. East of the railroad and running parallel to it for 100 feet south from the crossing there is an unnamed street, a town

highway, which approaches the railroad from the east and joins River street just east of the crossing. Between this street and the railroad there is a board fence which continues up to a point opposite the south end of the crossing planks. This fence is about 23 feet from the nearest rail, and varies in height at different places from five and nine-tenths feet to six and nine-tenths feet. On the east side of the unnamed street there is a stone store called the Arctic store, the northern side of which is about 100 feet south of the northerly end of the board fence above mentioned. At the Arctic store the town highway leaves the line of the railroad and bears away from the railroad in an easterly direction. Just south of the crossing a spur track leaves the main line track, extending southerly and on the east of the main track and parallel to it. On the easterly side of this spur track and about 400 feet south of the crossing there is another building described as the "store house," "cotton house" or "waste house." The crossing is planked to a width of 52 feet and there are crossing gates which are operated by hand. The view from the center of the crossing looking south extends for 714 feet. The view from the corner of the fence looking south is unobstructed and is somewhat more extended. There is no obstruction to the view at any point from the corner of the fence to the rail; north of the crossing the track is straight and the view is unobstructed. On the westerly side of River street and 104 feet west of the crossing is the home and grocery store of Joseph E. Maynard, the employer of Ephrem Geoffroy. The train was a regular express train from Willimantic to Providence which did not stop at Arctic station. It was due to pass this crossing at 8:07 p. m. each evening and this fact was known to Ephrem Geoffroy who was familiar with the crossing over which he had occasion to pass frequently. On the night of the accident Geoffroy, who was driving an automobile delivery truck, approached the railroad crossing from the east on the town highway. The train was about thirty minutes late and was running at the rate of about

forty-five miles an hour. The railroad gates were operated by hand by the station agent during the day and by a night-crossing tender during the night. This night-crossing tender, who was called as a witness by the plaintiff, testified that at the time of the accident the gates were not lowered on the approach of the train; that he was in and out of the station and on the platform; the electric alarm bell did not ring as usual and he first heard the locomotive whistle when the train was at the waste house and it was then too late for him to get to the crossing and lower the gates in time; that the engineer perceiving that the gate was up continued to blow his whistle, after passing by the waste house, up to the crossing.

Joseph E. Maynard testified that Geoffroy, who was twenty-one years old, had worked for him soliciting orders and delivering goods for a year and a half. That the automobile was a Ford delivery truck, open body with a closed-in winter top. There was an isinglass curtain on the left of the driver's seat and the side to the right of the driver was open. There was a curtain at the rear of the driver's seat which separated the driver's seat from the body of the truck. Maynard was standing outside the doorway of his store and saw the top of the automobile which was moving at the time in front of the stone store, and at the same time heard the whistle of the train which was then at the cotton house. The train was running forty-five or fifty miles an hour; the automobile was running about twelve miles an hour and kept the same speed from the time he first saw it until the collision. When the machine turned at the corner of the fence the locomotive was at the Arctic station; Geoffroy usually finished his work about 9 p. m. and left the machine in back of the store. A boy, who was not produced as a witness, was riding with Geoffroy at the time of the accident.

Joseph Potvin, an overseer in the Royal Mill, was walking toward the crossing on the road opposite Maynard's store, and saw the lights of the automobile when the machine

turned the corner at the end of the fence near the crossing; at this time the locomotive was in front of the railroad station. He stood there waiting for the train to pass; the gates were up, with red light on top, and he saw the engine strike the automobile. He heard the locomotive whistle when he was near a telephone post, between Maynard's store and the crossing, and it was about three seconds after he heard the whistle that he saw the lights of the automobile as it came around the corner of the fence.

Arthur Vanasse was standing in front of Maynard's store talking with Maynard and heard the train whistle somewhere in the vicinity of the cotton house; when he first saw the train the locomotive was passing the station and the automobile was then coming around the corner of the fence and within a very few seconds after he first saw the locomotive, it struck the automobile. The train was running between forty and fifty miles an hour.

Arselia Antaya, bookkeeper for Maynard, saw the accident. She was standing inside the store looking out of a window and could see the station and the board fence. The weather was cold and the door and window were closed. She heard the train coming and saw the top of the machine on the curve and then heard the crash. She heard the rattle of the train but did not hear any whistle. The train was at the station at the time she saw the automobile turning the curve by the fence. She was watching the train and consequently did not see the automobile go on the track.

This includes all of the testimony in regard to the happening of the accident and at the conclusion of the plaintiffs' testimony the trial court granted the motion of the defendant for a nonsuit on the ground that the plaintiffs' intestate was guilty of contributory negligence. The case is now before this court on the exception of the plaintiffs to the action of the court in granting a nonsuit.

There is no conflict in the evidence. The deceased was familiar with the surroundings and knew that he was

approaching the railroad crossing, which was a place of danger. There was nothing unusual to distract his attention; as he came up the grade by the Arctic store he knew that the board fence along the railroad track obstructed his view of the track from the crossing to the south. As he turned at the store there was a level stretch of road for 100 feet to the end of the fence and the view of the track to the north after he left the corner of the store was unobstructed so that when he reached the end of the fence near the railroad crossing he knew that the track was clear to the north and the only direction from which danger was to be apprehended was from the south. When he turned the corner at the store he was 100 feet from the crossing and the locomotive at that time was at or near the cotton house, about 426 feet south from the center of the crossing, behind him and running north in the same direction he was travelling. The whistle was blown repeatedly and the only noise was that coming from the train and from the operation of the automobile. It seems almost incredible that the deceased did not hear the whistle before he turned at the corner of the fence and the fact that the boy who was riding with the deceased was not called as a witness and that no explanation was given of the failure to call this witness who presumably could throw some light on the situation, furnishes a basis for the conclusion that the deceased did hear the whistle and decided to take a chance. However this may be, we assume that the deceased did not hear the warning and approached the crossing knowing that the gates were up. As he turned the corner at the fence if he had looked through the isinglass window of his curtain he had a clear and unobstructed view of the track to the south for a distance of more than 714 feet. He was then about 23 feet from the nearest rail and his automobile was running about twelve miles an hour, at such slow speed that it could easily have been brought to a stop within a few feet of the corner. If the deceased neither heard nor saw the train until it was too late to avoid a collision the conclusion is

unavoidable that he neglected to take any precaution what-
ever for his own safety and that he disregarded the oppor-
tunity to protect himself from danger by looking down the
track to the south and relied entirely on the fact that the
crossing gates were not closed.

The plaintiffs claim that when the crossing gates are
open a traveller on the highway is relieved from the obliga-
tion in approaching the railroad track to look and listen,
and that in such circumstances the question of his con-
tributory negligence is always a question for the jury.   In
support of these propositions they rely on the cases of
*Wilson* v. *N. Y., N. H. & H. R. R. Co.*, 18 R. I. 491, and 18
R. I. 598.

The *Wilson case* first came before the court on demurrer
to the declaration, and the court held that the leaving open
of the gates was in effect an invitation or more strictly
speaking an implied assurance to travellers on the highway
that the track might safely be crossed.   The plaintiff in that
case was a passenger in a large sleigh which was struck by a
locomotive at a railroad crossing.   The demurrer was over-
ruled and it was held that the question of plaintiff's con-
tributory negligence was for the jury.   In discussing the
effect of certain decisions of other jurisdictions the court
used language which perhaps not unfairly may be under-
stood as approving the doctrine that in every such case the
question of contributory negligence is for the jury.   When
the case again came before the court (18 R. I. 598) it was on
the petition of defendant for a new trial after verdict for
plaintiff in a trial by jury.   The opinion of the court in the
latter case as in the first case was delivered by MATTESON,
C. J.   Although the court at page 605 affirms the decision
above referred to on the demurrer it nevertheless qualifies
what otherwise might be regarded as a statement of a
general rule as follows: "The fact that the gates were
open and unattended was evidence of negligence."   . . .
"To relieve itself from the charge of negligence in leaving
the gates open, it was necessary for the defendant to show

that the other warnings of the approach of the train were such that the plaintiff should have heard or perceived them if in the exercise of due care. The jury were told that closed gates would be but one means of notifying travelers of danger; that if they were notified by the ringing of the bell or by the blowing of the whistle or by their vision or by any other means, that would be sufficient; because if the traveller had notice in any way of the approach of the train it would be contributory negligence for him to cross the track, and it would matter not, that the defendant might have been negligent. We think this instruction was correct and was sufficiently favorable to the defendant."

(1)    The *Wilson case* does not support the contention of the plaintiffs. As the closing of the gates is simply one means of notifying a traveller of danger the traveller can not rely exclusively on the fact that the gates are open, but must to some extent use his senses before going on to the railroad track.

The fact that the gates are open is an important fact for consideration in the determination of the question whether the deceased exercised due care. The weight properly to be given to this fact necessarily will vary in different cases and will be affected by consideration of the location of the gates, whether on a street in a populous city or in the (2) country, the presence or absence of traffic on the highway at the particular time and place, the presence or absence of obstructions near the track, the presence or absence of a gateman, etc. If the facts are in controversy or if fair-minded men can draw different conclusions from facts which are not controverted the question of contributory negligence would be then properly submitted to a jury.

In the present case, however, there is no dispute in regard to the facts. In the circumstances the deceased could not rely absolutely on the fact that the gates were open and fail altogether to use his senses to ascertain whether the track was clear. If he had looked down the track to the south at a time when he was in a place of safety he would

have seen the train and could have stopped his car in safety. He did not look but drove onto a dangerous crossing without taking precautions which he should have done.   No reasonably prudent man in the circumstances disclosed would have gone onto the tracks without looking and such being the case as the plaintiffs have failed to show that the deceased was in the exercise of due care, there was no error in the granting of the nonsuit.

Following are some of the cases cited by the defendant in its brief which are in accord with the conclusion of this court in the case at bar.   *Ellis* v. *B. & M.. R. R.*, 169 Mass. 600; *Lundergan* v. *N. Y. C. & H. R. R.*, 203 Mass. 460; *Koch* v. *So. Cal. R. R. Co.*, 148 Cal. 677; *Coyle* v. *B. & M. R. R.*, 77 N. H. 604; *So. Ry.* v. *Jones*, 118 Va. 685; *Schaub* v. *Kansas City So. Ry. Co.*, 133 Mo. App. 444; *Lindsay* v. *Penn. R. R. Co.*, 78 N. J. Law, 704; *Schnackenberg* v. *D. L. & W. R. R.*, 86 N. J. Law, 517; *Romeo* v. *Boston & Me. R. R.*, 87 Me. 540; *Hayes* v. *N. Y., N. H. & H. R. R. Co.*, 91 Conn. 301.

The exception of the plaintiffs is overruled and the case is remitted to the Superior Court with direction to enter judgment for the defendant on the nonsuit.

*Quinn & Kernan*, for plaintiff.
*Eugene J. Phillips*, for defendant.