## Susan Kennedy *vs.* N. Y., N. H. & H. R. R. Company.

### FEBRUARY 16, 1921.

Present: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Common Carriers.   Signals.   Grade Crossings.   Contributory Negligence.*

Gen. Laws, cap. 215, §§ 14 and 16, providing that a railroad corporation shall cause the bell upon a locomotive engine to be rung before crossing a highway, at grade, and that in case of neglect to comply with such provision the corporation shall be "liable for all damages sustained by any person for such neglect," does not eliminate the question of contributory negligence.

*(2)   Common Carriers.   Grade Crossings.   Contributory Negligence.   Signals.*

In a personal injury action arising out of an injury to plaintiff at a grade crossing, upon the facts:—

*Held,* that plaintiff was so palpably guilty of negligence in entering upon the railroad track without using her eyes to discover an imminent danger that she was as a matter of law precluded from recovery regardless of whether the statutory signals were given.

*(3)   Presumptions.   Trial.*

Presumptions have no place in the presence of the actual facts disclosed to the jury or where plaintiff should have known the facts had he exercised ordinary care.

Trespass on the Case for Negligence.   Heard on exceptions of plaintiff and overruled.

Per Curiam.   This is an action of trespass on the case for negligence, brought to recover damages for personal injuries sustained by the plaintiff by coming in collision with a railroad train of the defendant.

The case is before this court on the plaintiff's exception to the ruling and decision of the trial justice in the Superior Court nonsuiting the plaintiff.

The accident occurred December 31, 1917, at about 12:55 p. m., where Main street crosses the defendant's railroad track at grade at Oakland Centre in the town of Burrillville. The street crosses the railroad at approximately right angles and runs in a northerly and southerly course.   The railroad, which is a single track line, runs, at the crossing, approximately east and west but curves gradually to the north on either side of the crossing.   The railroad station, a building

20 by 16 feet, is located on the southerly side of the railroad and on the westerly side of Main street. The door of the station is on the east side of the building. The train causing the injury approached from the east. A person standing at any point between the station door and the crossing had a clear view of an approaching train for at least 800 feet to the east. It is about 32.9 feet from the station door to the crossing. The plaintiff testified that she came out of the station intending to cross the railroad track and board a street car at a white pole on Main street, a short distance at the north of the crossing; that on coming out of the station she looked down the track toward the east but saw no train; that she walked a few steps toward the crossing and looked to the west; that just as she was about to step upon the track she again looked down the track to the east but saw no train and heard no bell or whistle, but heard an automobile approaching from the south. The noise of the automobile caused her to look to the rear and when she again faced the crossing the locomotive was so near that it was impossible for her to step back in time to avoid being struck. The plaintiff was familiar with the crossing but did not know whether or not a train was due at that time.

At the conclusion of her testimony the trial court non-suited the plaintiff on the ground that she was guilty of contributory negligence.

The declaration contains two counts. The first count alleges negligence in failing to ring the bell on the locomotive while the train was approaching the crossing. The second count alleges that the train approached the crossing at an excessive rate of speed. There was evidence that the bell on the locomotive was not rung. This is evidence of negligence and consequently it must be assumed for the purpose of this discussion that the defendant was guilty of negligence in not ringing the bell. (Secs. 14 and 16, Chap. 215, G. L. 1909.)

The question presented for our consideration is whether on the evidence the trial court was justified in ruling as a

question of law that the plaintiff was guilty of contributory negligence. The plaintiff contends that the question of contributory negligence was a question of fact for the jury.

Why did the plaintiff fail to see the approaching train? She testified that it was a very cold day and that the wind was blowing "pretty hard." One witness testified that there was some snow on the ground but the plaintiff did not remember whether or not there was any snow. Another witness testified that "the general weather conditions were very cold and there was kind of drizzly that day and she (the plaintiff) had to put up her muff to her face and didn't appear to hear the train coming." The plaintiiff did not mention that the weather was "drizzly that day." She denied carrying a muff but testified that she wore a coat with a fur collar and cuffs.

It was suggested in argument that the plaintiff could not see the approaching train because of the weather conditions. From the testimony it appears that on an ordinary day a train could have been seen readily for a distance of 800 feet. The accident occurred in the daytime at about 12:55 o'clock, and although it was cold and the wind was blowing and the sun may or may not have been shining, there is no suggestion that a blinding storm was raging at the time. After considering all the testimony it cannot be contended seriously that the atmospheric conditions materially affected the view of the approaching train.

It was argued that the plaintiff was confused by the automobile coming up behind her. The automobile did not cause her to go upon or take a position near the railroad track. When she heard the automobile she already had placed herself in a position of danger. She was negligent before the automobile arrived. She testified, "I put my foot on the trestle and I heard an automobile; then I turned to see if it was back of me, and that is all I heard." Q. "When you say you put your foot on what?". A. "On boards, the trestle, the boards there." Q. "Now when you started to cross the track where were you? Where were

you with regard to those boards?"   A.   "Well, I had just put my foot over."   Q.   "Well, —".   A.   "The railing onto the board."   Q.   "Onto the board?".   A.   "Yes, sir." The plaintiff when she heard the automobile had not assumed the dangerous position she was in for the purpose of ascertaining whether it was safe to cross the track.   As she approached the crossing she had a clear view of the track to the east for a distance of 600 feet and a train could have been seen readily for at least 800 feet.   The accident could not have happened as the plaintiff testified that it did happen. She testified, "Well, when I looked the last time I was almost ready to put my foot on the crossing."   In this position of danger, according to her testimony, she looked down the track to the east but saw no train, looked behind her and then faced the track and was immediately hit by the locomotive.   The plaintiff may believe that she looked but had she looked she would have seen the train.   It must have been in plain view and close at hand.   According to the testimony the train was approaching at a rate of from thirty to forty miles per hour.

(1)   Counsel for the plaintiff argues that it is not negligence *per se* to fail to look before crossing a railroad track if the locomotive bell is not rung as required by statute.   Sections 14 and 16, Chap. 215, G. L. 1909, provide as follows: "Every railroad corporation shall cause a bell of at least thirty-two pounds in weight to be placed on each locomotive engine passing upon its road, and said bell shall be rung at a distance of at least eighty rods from the place where such railroad crosses any turnpike, highway or public way upon the same grade with the railroad, and shall be kept ringing until the engine has crossed such turnpike or road."   "Every railroad corporation which shall neglect or refuse to comply with the provisions of the preceding two sections shall be fined not exceeding one thousand dollars;   and such corporation shall be liable for all damages sustained by any person by reason of such neglect or refusal on the part of the corporation."   The above statute does not eliminate

the question of contributory negligence. Statutes of a few states in express terms eliminate contributory negligence. Other statutes provide that if the statutory warnings are not given the railroad company shall be liable if such neglect *contributed* to the injury. Aside from the statutes eliminating contributory negligence in the consideration of accidents at grade crossings when the statutory signals have not been given, the decisions are by no means uniform on the question of the duty of a traveler on a highway to stop, look and listen before entering upon grade crossings. The language of the decisions of a few courts make it an absolute duty to stop, look and listen. They declare that a failure to look is negligence *per se*. The Pennsylvania court appears to adhere most strictly to this rule; but even the Pennsylvania court has held that under very exceptional circumstances the question of a plaintiff's negligence in not looking before entering upon a crossing is a question of fact for the jury. The language of certain other courts would indicate that in their opinion contributory negligence is always a question for the jury and yet some of the latter courts, after announcing the broad doctrine, have held that the facts presented in the case so clearly showed negligence in not looking that it was error to submit to the jury the question of the plaintiff's negligence. The circumstances and conditions surrounding accidents at grade crossings vary so widely that it is difficult to lay down a general rule. While from the mass of decisions no general rule can be deduced which would be followed absolutely by all courts, we are clearly of the opinion that the vast majority of the courts hold that a person may be so palpably guilty of negligence in entering upon a railroad track at a grade crossing, without first using his eyes to discover an imminent danger, that he is as a matter of law precluded from recovery regardless of whether the statutory signals are given. It is well known that a railroad crossing is a place of great danger and that a prudent person does not attempt to cross without first looking to ascertain whether he may safely do so, unless there is

some strong and impelling reason for not looking. There can be no difference of opinion as to what prudent men do under ordinary circumstances when the view is unobstructed. Hence, it has become a rule of law that a person ordinarily must look and if he fails to do so he is guilty of negligence as a matter of law. 33 Cyc., at 1117, lays down the rule as follows: "Where the evidence clearly shows that the injured person's opportunity for seeing or hearing the approaching train at the time of the accident was such that he could not fail to have seen or heard it in time to avert the accident if he had used due care in looking and listening, his contributory negligence in this respect should not be submitted to the jury but is a question for the court and it may direct a verdict for defendant, grant a nonsuit, dismiss, or otherwise dispose of the case without the intervention of the jury, even though plaintiff testifies that he stopped, looked, and listened, or that he looked or listened but did not see or hear the train."

There are various combinations of facts which make the question of negligence in the failure to look a question of fact. It has been held to be a question of fact in numerous cases with varying facts, *e. g.*, where the track was so obscured that looking would avail nothing until the traveler reached a place of danger; where the tracks were more or less obscured and the traveler did not look at the most advantageous point; where it was dark and the tracks were obscured; where the traveler without negligence on his part was forced into a position of danger and had no opportunity to look; where the traveler was a passenger and had an implied invitation to cross or was actually invited to cross by an agent of the railroad company, etc. See I A. L. R. 198 for note and very numerous citations illustrating the various phases of this question.

Most of the cases cited by the plaintiff are not opposed to the general rule that when the view is unobstructed a person must look or be held guilty of negligence as a matter of law, *e. g.* In *Palmer* v. *N. Y. C. & H. R. R.*, 112 N. Y. 234, cited

by the plaintiff, the crossing gates were open and the view
was obstructed. In *Wallenburg* v. *Mo. Pacif. R. R.* 86 Neb.
642, cited by the plaintiff, the view was somewhat obscured.
The court held that it was a question of fact whether the
plaintiff was negligent in not looking at the most advan-
tageous point. The latter case referred to *Omaha & R.
Valley Ry. Co.* v. *Talbot*, 48 Neb. 627, without any apparent
intention of overruling the latter case which held that the
plaintiff was negligent as a matter of law.

*Ormsbee* v. *Boston & Providence R. R.*, 14 R. I., 102, was
a suit brought to recover for the death of an aged deaf man
who was killed while attempting to cross the defendant's
tracks at a public crossing. The view of the tracks was
unobstructed. The statutory signals were not given. The
train was making a "flying switch." The deceased saw
the locomotive pass over the crossing and then stepped
upon the track and while watching the locomotive, which
after passing backed on another track toward the crossing,
was struck by the forward car and killed. The gate was
down on the opposite side of the crossing but apparently
was not down on the side from which plaintiff entered. It
was held error to submit to the jury the question of whether
the diversion of his attention by the locomotive passing
and backing excused him from looking in the opposite
direction. The court, after citing a large number of author-
ities, said at p. 108: "This review of the cases is sufficient
to show the rule to be uniform and unquestionable, that a
traveller in crossing a railroad, even in the absence of ordi-
nary signals, must look up and down the track, except where
he is unable to do so, or where, as a passenger or otherwise,
he has an assurance of safety from the company which
excuses him. Indeed, it is quite unusual to find so little
difference in so many cases, and it must be for the reason
that the rule is founded, not in opinion or judgment, but in
common prudence and experience to such an extent that
courts can declare it as law. . . . If danger threatens
on one hand, a traveller on foot at least can stop until he

sees whether there is safety on the other, and if he does not do this he takes the risk upon himself. It is no harsh rule that a man should turn his head to look for a train that may be in plain sight." It was argued that this case was not an authority against the plaintiff for the reason that the gate on the opposite side of the crossing was down. It would seem that the deceased had a better excuse for not observing the oncoming cars with no locomotive attached to them than did the plaintiff have for attempting to cross the track without seeing the train. While the gate was down on the opposite side of the crossing, the gate on the side from which the deceased entered was apparently up and his attention was directed to the locomotive which had passed the crossing and was returning on another track. He was attempting to avoid one danger when he was overtaken by another. See also *Geoffroy* v. *N. Y., N. H. & H. R. R. Co.*, 42 R. I. 20, where a nonsuit was sustained. Plaintiff's intestate drove upon a public crossing and was killed by a rapidly moving train. The statutory signals were given but the gates were up. Had he looked he could have seen the train in ample time to stop before entering upon the crossing. See also *Jacobson* v. *O'Dette*, 42 R. I. 447.

The plaintiff in the case at bar did testify that she looked and listened but, as we have said above, had she looked she must have seen the train. This court in numerous cases has held that it avails a plaintiff nothing to say that he looked at a point where if he had looked he must have seen the train. *Beerman* v. *U. R. R.*, 24 R. I. 275; *McGoran* v. *N. Y., N. H. & H. R. R.*, 25 R. I. 387; *Geoffroy* v. *N. Y., N. H. & H. R. R.*, 42 R. I. 20; *Loiselle et al* v. *R. I. Co.*, 110 Atl. 407 and *Ricker* v. *R. I. Co.*, 107 Atl. 72.

It was argued that the plaintiff relied upon the statutory signals being given. She did not so testify. She testified that she looked. In *Mockowik* v. *Kansas City &c. R. R.*, 196 Mo. 550 at 571, the court said: "If plaintiff knew of the ordinances and relied on the fact that defendant was obeying their provisions and acted on that reliance, could he not have

said so? Under such conditions, reliance would seem to be a fact susceptible of proof as are other facts, and should be proved by the best evidence of which the case would admit. He of all men knew what the facts were, and, having declined to speak, may he invoke the aid of friendly presumptions?" And in *Schaub* v. *Kansas City, &c. R. R.*, 133 Mo. 444, at 450, the same court said: "He says he did look and no train was in sight and he is bound by this admission that he did not permit himself to be lulled into a false sense of security by the presumption now invoked. Pertinent to the discussion of the question as to whether he was entitled to indulge in any presumption at all from what he saw at the crossing is the following extract from the opinion of the Supreme Court in *Mockowik* v. *Railroad*, 196 Mo. 550:" " 'Presumptions,' as happily stated by a scholarly counselor, *ore tenus*, in another case, 'may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.' That presumptions have no place in the presence of the actual facts disclosed to the jury, or where plaintiff should have known the facts had he (3) exercised ordinary care, is held in many cases, of which samples are, *Reno* v. *Railroad*, 180 Mo. 469; *Nixon* v. *Railroad*, 141 Mo. 425; *Bragg* v. *Railroad*, 192 Mo. 331. To give place to presumptions, on the facts of this case, is but to play with shadows and reject substance.' "

It was not error to nonsuit the plaintiff.

The plaintiff's exception is overruled and the case is remitted to the Superior Court with direction to enter judgment on the nonsuit.

*James Harris, John P. Beagan,* for plaintiff.
*Eugene J. Phillips,* for defendant.