CLIFFORD A. LEMIEUX *vs.* LEONARD CONSTRUCTION
COMPANY.

SAME *vs.* HOWARD S. PALMER *et al., Trs.*

DECEMBER 19, 1947.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CONDON, J. These are actions of trespass on the case for negligence which were tried together in the superior court and, at the conclusion of the plaintiff's evidence, resulted in his being adjudged nonsuit on the motion of each defendant. The cases are here on plaintiff's exceptions to the granting of such motions.

The causes of action arose out of the collision of a jeep, so called, with a train at a railroad crossing, referred to in the evidence as Midway Pier Crossing, within the limits of the Melville fuel depot of the United States navy in the town of Portsmouth in this state. The collision occurred on November 26, 1943 in the daytime between 3:30 and 4 o'clock. At the time of the collision the jeep was being operated by Walter A. Kennedy, a naval lieutenant in

charge of police headquarters at the depot, who was transporting the plaintiff, a federal civil service policeman, to his post of duty in the vicinity of the railroad crossing. The train belonged to the New York, New Haven and Hartford Railroad Company, hereinafter called the railroad company, of which the defendants, Howard S. Palmer et al., were the trustees. The railroad crossed a road known as Midway Pier and this road was then undergoing repairs by the defendant, Leonard Construction Company, hereinafter called the construction company. In the course of its work, traffic over the road was directed by its servants and it maintained a watchman or crossing tender to warn travelers on the road of the approach of railroad trains.

Plaintiff charged the construction company with but one act of negligence, failure of the crossing tender, one Moffett, to warn or signal that a train was approaching. Against the railroad company he specifically alleged the following acts of negligence: first, failure of its servants and agents to warn or signal that the train was approaching the crossing; second, failure to have the train under control; third, failure to slow down at the crossing; and, fourth, operating the train at an unreasonable rate of speed.

Plaintiff's evidence in support of those allegations was found by the trial justice to be insufficient to entitle the plaintiff to have his case against either defendant submitted to the jury. He held that there was no evidence upon which the jury could reasonably find that the railroad company was negligent, and that the construction company's negligence, if any, "was not the cause of the collision between the jeep and the oncoming train, but rather the cause in that collision was the act of Mr. Kennedy in driving the jeep on to the track in the face of the approaching train under such circumstances that a collision was inevitable." He did not pass upon the question whether the plaintiff was negligent.

In considering the defendants' motions it was the trial justice's duty to view all the evidence most favorably to

the plaintiff without regard to its weight or credibility. *Schiano* v. *McCarthy Freight System, Inc.*, 72 R. I. 455. With that rule in mind we cannot, after carefully reading the transcript, agree with his rulings on these motions.

Viewed in a light most favorable to the plaintiff, there was evidence that Kennedy stopped his jeep east of the edge of a spur track and looked and listened before proceeding to cross the railroad; that he could see a distance of about 25 or 30 feet to the north, the direction from which the train approached; that he saw nothing coming and heard no whistle nor the sound of a train approaching; that he then looked across the tracks and seeing that crossing tender Moffett was standing near the tender's shanty in conversation with another policeman, whom plaintiff was about to relieve, and was not warning travelers away from the crossing, he considered it was safe to cross; that he was proceeding slowly at that time and stopped the jeep within a foot when the plaintiff suddenly called his attention to the oncoming train. There was also evidence that the plaintiff listened when the jeep was stopped at the edge of the spur track and could hear nothing; that he, too, looked up the track to the north about 50 feet and saw nothing; and that he also saw crossing tender Moffett talking to someone on the other side of the tracks and that he was not warning anyone off the crossing.

The man who was talking to Moffett testified that he did not hear the train, did not hear any signal, and did not see the train before it reached the crossing until his attention was called to it by the screeching of the engine brakes. This witness also testified that the train continued on for a distance of approximately 750 feet after the collision. He further testified that from where he stood on the westerly side of the tracks there was a clear view of the main track northerly for 700 feet; that on the easterly side of the tracks you could not see "quite so far" because there was a curve in the track; that if one was on the main track which is west of the spur track he could see about

600 feet, and if in the middle of the spur track, about 550 feet, but if one was "on the east side of the spur track you can't see very far." Taking that testimony in connection with the plaintiff's and Kennedy's testimony on this matter in its most favorable light to the plaintiff, one who was stopped east of the spur track could not see very far north, not more than 25 or 30 feet according to Kennedy, and .50 feet according to the plaintiff, because of a curve in the tracks. Plaintiff also testified that a bulldozer and scraper parked near the tracks obstructed his view.

■ Drawing all reasonable inferences therefrom favorably to the plaintiff, the evidence shows that there was considerable activity at this crossing; that for several months prior to the accident a crossing tender had been stationed there to warn travelers passing over it; that there was also a warning sign at the crossing such as is required by general laws 1938, chapter 124, §6, reading: "New York, New Haven & Hartford Railroad Crossing, Stop, Look And Listen." In the absence of contrary evidence it is reasonable to infer that Midway Pier Crossing was deemed by the railroad company and the state division of public utilities, which has supervisory power over the erection of such signs, a "public way" within the meaning of §6. It may further be inferred that the railroad company was aware of the added danger at this crossing and that it knew of the stationing of a crossing tender there by the construction company and acquiesced therein, or at least did not object thereto. Indeed, in its brief, it argues: "As a matter of law the defendant railroad had the right to assume that Moffett would be on his job protecting the crossing."

On the foregoing favorable view of the uncontradicted evidence and in the absence of physical facts to the contrary, it could not be said as a matter of law that the railroad company was not guilty of negligence. In this state of the evidence it was for the jury to say whether the company had notice of the dangerous nature of this

crossing and whether it had exercised due care in driving its train over the crossing without giving any warning and at such speed that it could not be stopped until it had passed 750 feet beyond the crossing.

■■ If it relied wholly upon the crossing tender to give the necessary warning, then it adopted him as its agent to perform that duty and would be answerable for his negligence. In such a case the railroad company cannot escape liability on the ground that as to it the crossing tender was a mere volunteer. For the rule is: "In case the volunteer renders a beneficial service for the alleged master, in his presence or with his knowledge, and is suffered to proceed without dissent, an assent may be implied and the relation of master and servant established to an extent necessary to render the master liable to third persons for the tortious acts of the volunteer done in the course of such service." Huffcut on Agency (2d ed.) 293, citing *Hill* v. *Morey,* 26 Vt. 178.

It has been held that the negligence of a crossing gate tender, who was hired by a bridge company whose road crossed the tracks of a railroad company, was nevertheless chargeable to the railroad company. The court observed that although as between the railroad company and the bridge company it was the latter's duty to perform the service, as to the public it was the duty of both and neither could escape liability for such negligence. *Louisville & Nashville R.R.* v. *Roth,* 130 Ky. 759. See also 18 R. C. L. 776, §236, and note in 51 L.R.A. (N.S.) 866, 869.

But the railroad company argues that in any event this particular crossing was a private crossing and it was, therefore, not bound, at least as required by G. L. 1938, chap. 124, §5, to warn travelers using it. That statute requires a certain warning to be given at least 80 rods from the place where the "railroad crosses any turnpike, highway or public way upon the same grade with the railroad . . . ." What is a public way? Is it used here as a synonym for "turnpike" or "highway", or is it used in a broader sense than

either of those words? We think it is used in the latter sense.

A way may be neither a turnpike nor a highway and yet be a public way. If the public has the right to use the way and exercises that right, even though it is neither dedicated as a highway nor maintained as such at public expense, it may nevertheless be properly deemed a public way, as distinguished from a mere private way. That Midway Pier Crossing was entirely within the Melville fuel depot does not make it a private way, if the general public who had occasion to travel within the limits of the depot had the right to pass freely over such road. It is apparent from the record here that Midway Pier Crossing was not deemed by anyone to be a private crossing as that term is understood in railroad law.

It is stated in 3 Elliott on Railroads (3d ed.) 457, §1620: "Private or farm crossings, as distinguished from public crossings, are those crossings which are constructed not for the use of the public, but for the benefit of a single individual or group of individuals, and are crossings in which the general public have no interest." A road, though not dedicated as a highway, has been held to be a public way and a railroad company is required to observe statutory warnings when crossing it with its trains. *McQuin* v. *Missouri Pacific R.R.*, 122 Neb. 423. According to the weight of authority as well as the better reasoning, where a road which crosses a railroad is apparently open to the public and is used by it with the assent or acquiescence of the railroad company, it is the company's duty to exercise care for the benefit of travelers on the highway when approaching such crossing, whether or not the road has been legally established by dedication or by prescription. 44 Am. Jur. 748, §508. And it has also been held in *Caudle* v. *Seaboard Airline Ry.*, 202 N. C. 404, that a railroad has a duty to signal the approach of its trains at a crossing which the public has habitually used, and its failure to do so is negligence. Applying the foregoing rules of

law to the facts in evidence here, it is clear that the trial justice erred in holding that there was no evidence upon which the jury could reasonably find the railroad company guilty of negligence.

██ We now come to the consideration of the evidence as to the alleged negligence of the construction company. We think this point needs no elaboration. Clearly there was evidence from which the jury could have reasonably found that such company was guilty of negligence for the failure of its servant Moffett to give timely warning of the approaching train. But it nevertheless contends that it is not liable to the plaintiff, because the evidence shows that Kennedy was guilty of negligence as a matter of law and that such negligence was the sole proximate cause of the collision which resulted in the plaintiff's injury. The railroad company joins in that contention in its own behalf. Before we come to the question of proximate cause we must first determine whether there is any evidence here, when viewed most favorably to the plaintiff and without regard to the credibility of the witnesses, on which the jury could reasonably find that Kennedy was not negligent. If there is, then it was error to grant defendants' motions for nonsuits, unless it appears from the evidence that the plaintiff himself was negligent as a matter of law.

██ After considering the evidence, bearing in mind the rule which requires us on the defendants' motions to view it most favorably to the plaintiff, we are of the opinion that it does not show that either Kennedy or the plaintiff was guilty of negligence as a matter of law. Rather the evidence is such as to present the question of contributory negligence peculiarly for the jury. We have here not a case of a collision at a railroad crossing where the plaintiff did not look or listen, or where, on undisputed physical facts, it is clear that if he had looked or listened, he must have seen or heard the train. Defendants contend that the evidence presents the latter situation, but with that contention we cannot agree. Only by viewing the

evidence favorably to the defendants rather than to the plaintiffs, it seems to us, can such a conclusion be reached. This we are not permitted to do.

Ordinarily the question of contributory negligence is for the jury. Only when there is no controversy as to the facts and it clearly appears from them what course a person of ordinary prudence would pursue is it a question for the court. Thus when the standard of duty is fixed and the negligence is clearly defined and palpable the court will not leave the case to the jury. But such cases are few and generally they present simple situations where an ordinary prudent person would instantly perceive what to do or what to refrain from doing. *Clarke* v. *Rhode Island Electric Lighting Co.*, 16 R. I. 463. See *Boss* v. *Providence & Worcester R.R.*, 15 R. I. 149, for a further discussion of the principle and its application; also *Provenzano* v. *Illinois Central R.R.*, 263 Ill. App. 530. From the evidence which we discussed earlier in this opinion it is clear that the instant case is not one where the facts are simple and the standard fixed. Here a number of factors complicate the situation, if we are to believe Kennedy and the plaintiff. They say that they stopped, looked and listened and neither saw nor heard the train approaching, and did not hear any signals. Whether in the circumstances as they relate them they stopped at a place where a prudent man would stop, look and listen, and whether what they did thereafter, in the light of such precautions and the failure of the crossing tender to warn them off the crossing, was prudent was for the jury to say, and not for the court.

We do not think that the facts here are like those in *Loiselle* v. *Rhode Island Co.*, 110 A. (R.I.) 407, upon which defendants so strongly rely. There the driver of the automobile before going upon the crossing relied almost wholly upon an automatic signal and took practically no precautions for his own safety. They also cite two other cases, *Geoffroy* v. *New York, New Haven & Hartford R.R.*, 42 R. I. 20, and *Kennedy* v. *New York, New Haven & Hart-*

*ford R.R.*, 43 R. I. 358. Each of those cases also presents facts which differentiates it from the case at bar.

In the *Geoffroy* case there was evidence that although the gates were open the train whistle was blown repeatedly; that the deceased had a clear and unobstructed view of the track for 714 feet; and that his automobile was running at about twelve miles per hour. This court held that the deceased had no right to rely solely on the open gates *without stopping to look and listen,* and without taking any other precautions for his own safety.

In the *Kennedy* case the plaintiff testified that she looked and listened, but did not see or hear the train. This court held that if she looked she must have seen the train and that she did not rely upon the statutory signals. The court in reaching its decision in that case apparently felt that the only reasonable view from the uncontradicted evidence was that plaintiff was palpably negligent and, therefore, there was nothing to submit to the jury. We do not, as we said above, so view the evidence here, and hence we think that the court is precluded from holding plaintiff guilty of negligence as a matter of law.

In cases somewhat like the case at bar, where the train gave no warning of its approach, or a flagman or crossing tender failed to warn the driver, or where both such omissions concurred, courts have held the question of the driver's negligence to be for the jury. In *Ernst* v. *Hudson River R.R.*, 39 N. Y. 61, 65, the court said: "The absence of the accustomed signals is calculated to impart an assurance of safety, particularly to one who is in the habit of crossing the same spot frequently, and who, perhaps, has never before known of their omission . . . ." The court further said in that case that if a motion for nonsuit had been granted it would have been set aside. Such a motion was denied in *Kissenger* v. *New York & Harlem R.R.*, 56 N. Y. 538, where, as in the case at bar, the flagman was talking to another person and not attending to his duties. And in *Palmer* v. *New York Central & Hudson River R.R.*,

112 N. Y. 234, it was said that open gates were an assurance that neither train nor engine was rendering the way dangerous, and that the silence of the bell and whistle was an indication to the plaintiff that no train or locomotive was within 80 rods of the crossing. The court held that, although the plaintiff was still bound to use ordinary care for his own safety, the measure of that care varied with the circumstances, and negligence could not be presumed but was a question for the jury. See also *Barber* v. *Southern Ry.*, 193 N. C. 691.

In another case even where plaintiff failed to stop, look and listen, but proceeded across the crossing as a flagman was talking to a cab driver, the court held that the plaintiff could not be deemed negligent as a matter of law. *Wessling* v. *Southern Pacific Co.*, 116 Cal. App. 447, citing as authority *Gregg* v. *Western Pacific R.R.*, 193 Cal. 212. In the latter case, at page 224, the court observed: "The extent to which a traveler may rely upon the assurance of safety arising from the absence of a flagman from his post of duty on the presumption that it is safe for him to cross a railroad track which he is familiar with is generally held to be a question of fact for the jury." To the same general effect are *Chicago, St. Louis & Pittsburg R.R.* v. *Hutchinson*, 120 Ill. 587, and *Sharpless* v. *Delaware, L. & W. R.R.*, 286 Pa. 439. See *Webster* v. *Canadian Pacific Ry.*, 103 Vt. 460; also, although briefly reported, *La Belle* v. *Rhode Island Co.*, 73 A. (R.I.) 306.

Defendant railroad company in the case at bar contends, however, that the train here involved was a heavy passenger train consisting of seven coaches and a baggage car drawn by a steam locomotive, and that Kennedy and plaintiff must have heard it approaching, if they were listening. Whether or not this follows cannot be presumed, especially as the person who was talking to crossing tender Moffett also testified that he did not hear the train approaching until he heard the screeching of its brakes. If the train did actually make loud sounds it would be a weighty circum-

stance in opposition to the plaintiff's evidence, but in that respect it would be for the jury to consider. *Louisville & N. R.R.* v. *Ratliff's Admr.*, 260 Ky. 380.

■ In *Bates* v. *Rutland R.R.*, 105 Vt. 394, there was evidence that the engine was working steam or "puffing" and that the train rumbled loudly through a cut which tended to act as a funnel and accentuate the sounds toward the crossing. Yet even there the court held that such facts were not controlling and that it was for the jury to say whether the plaintiff had made such a vigilant use of her sense of hearing as a prudent person in the circumstances would have made. The court there also held, at page 401, that "Although the failure of the defendant to sound the whistle or ring the bell did not excuse the plaintiff from the exercise of due care for her safety, it is a circumstance to be taken into consideration in determining whether she exercised the requisite care or not; for negligence cannot be imputed to one who is deceived by circumstances calculated to mislead a prudent person." This is substantially the view that was expressed by this court in *Wilson* v. *New York, New Haven & Hartford R.R.*, 18 R. I. 598. In that case the court said that even if the driver had been the plaintiff, the question of his negligence in relying upon open gates and the absence of signals of an approaching train as assurance that it was safe to cross the tracks would be for the jury. That case and its predecessor in 18 R.I. 491 clearly stand for the principle enunciated in the authorities above cited, and we reaffirm it here.

The plaintiff's exception in each case is sustained, and each case is remitted to the superior court for a new trial.

ON MOTION FOR REARGUMENT
APRIL 30, 1948.

PER CURIAM. After our opinion in the above entitled cases was filed each defendant requested and was granted permission to file a motion for leave to reargue. Each defendant thereupon filed such a motion including therein a state-

ment of the reasons upon which it was based. In some instances those reasons relate substantially to points of law which were argued in the original hearing and upon which no further argument is necessary. For the most part they consist of contentions which are dependent upon inferences from the evidence which are favorable to the defendants and are contrary to the inferences most favorable to the plaintiff, which we were by law required to draw upon a motion for nonsuit.

We have examined each of those reasons and are satisfied that none of them would justify us in granting a reargument of either case. It is to be borne in mind that such conclusions of law as we stated in the original opinion were conditioned, so to speak, by the status of the case at that time when only the plaintiff's evidence was before us. When the case is fully tried defendants conceivably may be able to present evidence which will remove several inferences favorable to the plaintiff which we were required to draw on the record before us.

In the event of such an altered factual situation defendants would not be foreclosed by such conclusions of law as we laid down in the original opinion based upon different facts. For that reason as well as for others above indicated, we have declined here to refer to the facts more fully and to discuss each specific point of defendants' motions. On the factual situation as it existed in the record before us on review we do not find any justifiable ground for reargument in either case. We are still of the opinion that a new trial is necessary to do substantial justice between the parties.

The motion in each case is denied.

*Eugene J. Sullivan, Jr.,* for plaintiff.

*Francis B. Keeney, Jr., Francis X. LaFrance, Frederick W. O'Connell, Swan, Keeney & Smith,* for Const. Co.

*William E. Boyle, William J. Carlos,* for Howard S. Palmer *et al., Trs.*