SCHILAWSKE *v.* DETROIT, JACKSON & CHICAGO
RAILWAY CO.

1. APPEAL AND ERROR—JUDGMENT—NON OBSTANTE VEREDICTO.
   In determining whether the court erred in entering judgment for defendant *non obstante veredicto,* the testimony must be taken in the light most favorable to the plaintiff's case.

2. STREET RAILWAYS—DEATH—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   In an action for the death of plaintiff's decedent who was struck and killed by an interurban car on the south track while crossing a city street, where there was evidence

On duty to look and listen before crossing interurban electric railway on company's own right of way, see notes in 15 L. R. A. (N. S.) 254, and 23 L. R. A. (N. S.) 1224.

that the night was dark and stormy, with snow and sleet and a high wind blowing, that the tracks and pavement were covered with ice, that the car had no headlight burning and did not sound any gong or whistle, that it was traveling at the rate of 30 or 40 miles an hour, that it was not visible to witnesses until within 25 feet of decedent, that before crossing the north track decedent was seen to look both ways, but did not look again in either direction before crossing the south track, but appeared to be looking straight ahead, watching the pavement, it cannot be said that, under the special circumstances of this case, decedent was guilty of contributory negligence as a matter of law.

Error to Wayne; Hally, J. Submitted April 9, 1919. (Docket No. 8.) Decided May 29, 1919.

Case by Richard F. Schilawske, administrator of the estate of August Schilawske, deceased, against the Detroit, Jackson & Chicago Railway Company and the Detroit United Railway for the negligent killing of plaintiff's decedent. Judgment for defendant Detroit United Railway on a directed verdict, and *non obstante veredicto* the Detroit, Jackson & Chicago Railway Company. Plaintiff brings error. Reversed, and judgment entered on the verdict.

*Benjamin & Betzoldt,* for appellant.

*Frederic T. Harward,* for appellees.

KUHN, J. On February 1, 1915, at about 7:30 o'clock in the evening, plaintiff's intestate, a man 62 years of age, was struck by an interurban car of the Detroit, Jackson & Chicago Railway Company at the intersection of Michigan avenue and Twenty-fourth street in the city of Detroit and received injuries which resulted in his death. Plaintiff, as administrator, brought this action under the survival act against the Detroit United Railway and the Detroit, Jackson & Chicago Railway Company and obtained a verdict

against the latter company of $2,500. The trial judge, however, upon motion, entered a judgment *non obstante veredicto* in favor of the defendant. Whether or not the court erred in thus setting aside the verdict and entering judgment for the defendant is the sole question before us. In determining this question, the testimony must, in accordance with the well-established rule, be taken in the light most favorable to the plaintiff's case. Thus viewed, there was evidence from which the jury might have found the following circumstances: Plaintiff's intestate was attempting to cross Michigan avenue from the termination of the east sidewalk of Twenty-fourth street north of Michigan avenue to a point some 15 or 20 feet east of the east curb of Twenty-fourth street south of Michigan avenue, there being a jog in the line of Twenty-fourth street as it crosses this thoroughfare. When first seen by any of the witnesses, he was standing about two feet north of the northerly rail of the double tracks on Michigan avenue. At that point he was seen to look both ways and then to start walking across the tracks, and the testimony indicates that he did not look again in either direction, but appeared to be looking straight ahead until the moment of the accident. It was a stormy night, with rain, snow and sleet and a high wind blowing out Michigan avenue from the east. The tracks and the pavement were coated with ice. About two minutes before the accident occurred the street lights had gone out and the street for some distance either way was dark, except for the store lights. In front of plaintiff's intestate as he proceeded was a lighted store and a theater with lights in front. Just as deceased was stepping over the last or southerly rail of the southerly track, an eastbound interurban car struck him and knocked him over to within two or three feet of the south curb of Michigan avenue. There was testimony that the interurban

car had no headlight burning and that it did not ring any gong or blow any whistle as it approached Twenty-fourth street, and that it was traveling at the rate of 30 or 40 miles an hour; that its approach was not heard by any of the witnesses, partly because of the strong wind blowing against it and partly because the ice on the rails deadened the sound; that the lights in the car could not be seen by any one in front of the car on account of the snow and sleet coating the windows. None of the witnesses saw the car until it was about 25 feet from decedent, who was at that time between the two rails of the southerly track on which it was approaching. The motorman testified that he did not see deceased until the moment he stepped upon the track in front of the car and that the car at that time was but 10 or 15 feet from deceased. To enable the motorman to see out of the vestibule window that night, it was necessary for him to use a scraper to clean the window every two or three minutes. After using the scraper, it is his claim that he could see about 100 feet ahead of him. When questioned as to when he had last wiped the snow off the window, he replied:

"I do not remember. I don't remember whether it was a minute or two minutes or three minutes before that time I wiped the snow off the glass. Wiping that glass off was a very frequent occurrence because of the storm."

He further testified that on account of the darkness he had to depend upon the gong all the time to warn people; that he would consider it dangerous to run the car that night without ringing the gong, even if going at a speed of only five miles an hour; that in the condition the tracks were that night, a car traveling at a speed of five miles an hour could not, even in an emergency, have been brought to a stop in less than 100 feet, nor an ordinary stop made in less than

150 to 200 feet. The testimony of one of plaintiff's witnesses, Jacob Steinberg, contained the following:

"There wasn't any headlight. The car was just twenty-five feet away from the man, and I was watching him crossing the street.

"Q. When that man went on the first rail, how far was the street car from him?

"A. I couldn't see no street car. When I first saw the street car, the man was just stepping over the last track. The man was between the third and fourth rails when the car was just 25 feet away from him. He was right in the middle between these tracks when I first saw the car 25 feet away. The store lights did not go out at the same time the street lights went out. I couldn't see no lights in the car, only when the car passed by me. I didn't hear this car. It didn't make any noise. I never saw a big interurban car passing there before that didn't make a noise.

"Just as he was between the third and fourth rail I turned my head to see if there was any car coming, or hear any car coming. I didn't hear no car coming. I was watching this man go across because he was an old man, and the road was slippery, and I thought he would slip or something. Right in the tracks there was sort of slippery. I was watching to see if any car would be coming, or if he would be hit by a car. I didn't see any car coming. Then I saw a car about 25 feet away, when he was between the third and fourth rail. *    *    *

"Q. You say you couldn't see west but 25 feet?

"A. Couldn't see anything very distinctly over 50 feet is what I said. As there was no headlight on this car, I said you couldn't see it only about 25 feet from the man. You could see east all right, but you couldn't see west. There was no lights up there, the way the car was coming. The lights from the theater lit up the place where the accident happened."

The action of the learned trial judge in entering the judgment notwithstanding the verdict was based upon his finding that the evidence showed conclusively that plaintiff's intestate was guilty of contributory negligence.

In the case of *Bady* v. *Railway*, 180 Mich. 380, Mr. Justice BIRD, speaking for the court, said:

"It is gathered from the testimony of the plaintiff and his witnesses that the night in question was a dark and stormy one, that the car was being operated at a high rate of speed, without a headlight, and that no warning was given as it approached the intersection of the avenues. It further appeared that there was no street light at the intersection. Under this state of facts, we do not think it should be said, as a matter of law, that plaintiff was not in the exercise of ordinary care in attempting to go across the track. That question was one of fact to be determined in view of all the circumstances by the jury. In determining the question, it was proper for the jury to consider to what extent the storm and darkness might have prevented him from discovering the car in season to avoid it, and it was likewise proper for them to consider to what extent the failure to have a headlight in the usual position on the car might have misled him, and also to consider whether his lack of appreciation of the danger he was in was due in any manner to the failure of defendant to do the usual thing and sound the gong as the car approached the intersection.

"Notwithstanding the presence of all these conditions, as is urged by defendant, it would seem as though plaintiff ought to have seen or heard the car approaching if he took the precaution which he testified he did before attempting to go upon the track; but whether he did the thing which ordinarily careful and prudent men would do under similar circumstances is a question which is not within our province to decide. *Wavle* v. *Railways Co.*, 170 Mich. 81 (Ann. Cas. 1914B, 149)."

The facts in the instant case correspond very closely. In each case the injured person stopped and looked just before going upon the track. But there is one important difference. In the *Bady Case* plaintiff had but a single track to cross, while in the case at bar the accident happened on the farther of the two tracks in the street and deceased stopped to look only before

going upon the nearer track. It is this fact which is relied upon by defendant's counsel as conclusively establishing negligence on the part of deceased. He says in his brief:

"It appears conclusively from the above that decedent made his observation to see whether or not it was safe to cross when at a point 2 feet north of north rail of west bound track—then proceeded to cross. * * * He therefore walked nearly 12 feet after making his observation—onto the tracks immediately in front of oncoming car, and was hit, without looking again—and that too on a stormy, sleety night, when according to the testimony of his witnesses it was dark—street lights out—7:30 at night. * * * His observation may have been all right so far as the west bound track was concerned, * * * but unfortunately for him the east bound track was fraught with just as much danger. * * * When there are double tracks upon the street, there are two danger zones. * * * and he can't escape the imputation of negligence in approaching the eastbound track by claiming he made the proper observation when approaching the westbound track."

And again:

"The worst storm of the winter was raging. The city lights, according to defendant's witnesses, had temporarily gone out; it was snowing and sleeting; it was night time and one could not see as far as usual. All these factors would have some bearing on decedent's contributory negligence, as the care incumbent upon him in crossing the street would be commensurate with the unusual elements which he had to contend with. These obstacles then only increased the care which he should have used—not diminished it."

While it is true that the increased peril rendered greater precaution necessary, it is also true that the confusion and bewilderment produced by the darkness and the storm introduces an element of uncertainty into the attempt to arrive at a judgment as to how an ordinarily prudent and careful man would

have acted under the very unusual circumstances in which the deceased found himself. The precautionary measures which would at once suggest themselves in ordinary crossing cases, based on a lifetime's experience, might seem to one in decedent's situation of little value. He was beset with new and unusual perils. There was a driving wind with sleet and snow. The pavement was coated with ice. His range of vision in either direction was limited. If he ought to have had in mind the possibility of a car without a headlight suddenly looming out of the darkness, bearing down on him at a speed of 30 or 40 miles an hour, from which direction ought he to have expected it? Or why a street car more than a rapidly approaching automobile, without lights, hurrying in one direction or the other along almost any portion of the width of the pavement? If he had stopped a few feet north of the second track to look carefully to the west, might not that very delay and diverting of his attention towards that direction have resulted in a failure to escape an automobile or a street car from the east, which might have caught him as suddenly and without warning as the car which actually did appear from the west? He had no more reason to expect it from the one direction than the other. Or might not even such a slight delay have resulted in his being trapped in the "devil's strip" between two cars approaching from opposite directions with equal disregard of their duties towards persons on the highway? Prudence may have suggested to him that the safest course was to make the crossing as rapidly as possible under the circumstances. One of these circumstances was the icy pavement. To a man of his years a mere fall caused by slipping might have had serious consequences. Moreover, the possible danger of falling on the track and becoming so disabled as to be unable to quickly extricate himself

from the peril of an approaching car or other vehicle may, perhaps, have seemed to him a more real and imminent danger than the remoter possibility of being trapped, while on his feet and proceeding with as much speed as caution would permit, by the rapid and unwarned approach of an invisible car without a headlight—a combination of negligent circumstances which he had little reason to anticipate. It is not unreasonable to say that one of the first dictates of prudence may well have been to give special care to his footing, to keep his attention on the way before him, and not to hasten unduly or make any sudden or uncertain move. That he was in fact following this course is indicated by the statement of the motorman that:

"He was looking down, watching where he was walking, I should judge."

A person, without turning his head perceptibly, can, if attentive, usually, detect the approach of a car or vehicle at some little distance, and there is room for the inference, from decedent's conduct and his surroundings, that his mind was on the alert and that he was listening and attentive, trying to catch any warning of danger from either direction. Under the special circumstances of this case, we are of the opinion that it cannot be said that the plaintiff's decedent was guilty of contributory negligence as a matter of law.

We are therefore constrained to hold that the circuit judge erred in setting aside the verdict of the jury and entering a judgment *non obstante veredicto* in favor of the defendant. This order will be reversed, and judgment should be entered in accordance with the verdict of the jury as rendered, with costs to the appellant.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.