15073

BAXLEY v. ATLANTIC COAST LINE R. CO.

(8 S. E. (2d), 744)

November, 1939.

*Messrs. Joe P. Lane, Hawkins & Bethea* and *Herbert M. Britt,* for appellant,

*Messrs. Gibson & Muller* and *Woods & Woods,* for respondent,

May 1, 1940.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

The plaintiff, as administratrix of the estate of Harvey Baxley, brought action against the defendant, Atlantic Coast Line Railroad Company, seeking to recover damages for the

alleged negligent, careless, willful and wanton killing of her intestate.

The complaint alleges that on the night of October 29, 1938, as the said Harvey Baxley was crossing Main Street in the Town of Dillon, S. C., with its intersection with defendant's line of railway, and just as he was clearing the line of railway, he was struck by a train on the defendant railroad, traveling at a high and reckless rate of speed without giving warning of its approach, which inflicted injuries from which Harvey Baxley immediately died. The usual allegations of negligence were made, viz., high and reckless rate of speed, failure to give the crossing signals, failure to keep a lookout for travelers and pedestrians.

The answer admits the formal allegations; admits that Harvey Baxley was killed in a collision with one of its trains at the crossing of its main line of railroad tracks with Main Street in the Town of Dillon, but denies the other allegations of Paragraph 3. It admits that said crossing is public but denies the other allegations of Paragraph 4. It denies the allegations of the first paragraph numbered 5; it has no knowledge or information sufficient to form a belief as to the allegations of the second paragraph numbered 5, and therefore denies same. It denies the allegations of Paragraph 6. Further answering, the defendant alleges: "That on August 27th, 1938, in the nighttime, Harvey Baxley was walking west on the sidewalk of Main Street of the Town of Dillon, toward the crossing of the main line railroad tracks of defendant by said street, said crossing being at right angles; that said crossing was protected by a watchman on the east side of same, the side from which Harvey Baxley was approaching; that a Southbound passenger train of defendant running on its regular schedule of time, and with its headlight burning brightly, was approaching from the North; that as Harvey Baxley walked toward the crossing, for a very considerable distance before he reached the Southbound track, his view of defendant's tracks for more than a mile to the North was entirely clear and unobstructed; that Har-

vey Baxley was thoroughly familiar with the location of the crossing and with all of the surrounding circumstances, and knew that fast trains of defendant passed and might be expected to pass over said crossing at any time; that notwithstanding all of the foregoing facts and circumstances, and notwithstanding the noise said train was making and its signals by bell and whistle, and notwithstanding warning signals by said watchman, Harvey Baxley proceeded along sidewalk and walked onto the Southbound railroad track of defendant immediately in front of said train, without looking, listening or otherwise exercising the slightest care for his own safety; that the aforesaid conduct of Harvey Baxley was negligent, grossly negligent, reckless, willful and wanton and contributed to his injury as a proximate cause thereof, and even if defendant was negligent, careless, willful and wanton, as alleged in said complaint, which it expressly denies, it pleads defendant's contributory negligence, gross negligence, recklessness, willfulness and wantonness in bar of this action."

The case was heard by Hon. Philip H. Stoll at the fall, 1939, term of the Court of Common Pleas for Dillon County. At the close of the testimony for plaintiff, defendant made a motion for nonsuit on the ground that the deceased was guilty of contributory negligence and gross negligence in walking upon the track on which a train was approaching, without stopping to look or listen or to do any act for his own safety. It is agreed by counsel that the train did not stop after Baxley was killed. After argument, his Honor said: "I don't see how you can hold the Railroad Company responsible. I don't like to direct verdicts or grant nonsuits unless I have a positive conviction that it is what I ought to do, but my conscience won't let me do otherwise in this case. Of course, I may be wrong, but I can only give my judgment on it.   *   *   * "

The nonsuit was ordered.

Plaintiff appeals upon five exceptions, but in her brief stands upon two questions, to wit:

"1. Was the evidence sufficient or rather was there any evidence to show, *prima facie,* that the defendant was guilty of gross or wilful negligence or acting in violation of law?

"2. Notwithstanding an affirmative answer to question one above, however did the evidence show that the intestate was guilty of gross or wilful negligence so clearly that the Court could so declare as a matter of law, and grant a nonsuit?"

We will consider these questions together.

We think the law governing cases of this nature and decisive of this case, is plain. Does the evidence support the order granting the nonsuit? Here is the setting of the case:

The Atlantic Coast Line Railroad's main lines run through the Town of Dillon. These are through trains which run from New York to Florida which do not stop at Dillon. These trains cross Main Street in the said town at right angles. Perpendicular to Main Street is East Railroad Avenue on the east side of the railroad. Harrison Street is one block north of, and parallel with, Main Street. Plaintiff's intestate was about 44 years of age; a resident of Latta, but worked for the W. P. A. at Dillon; was familiar with the situations and surroundings at the place he was killed. He knew that defendant's double track main line passed over that crossing and that fast through trains moving in both directions passed at all hours. Intestate's eyesight was good, his hearing bad. There can be no doubt that it was the duty of the deceased to use his sense of sight and hearing to care for his own safety. Let us scan the testimony, all of which was offered by plaintiff, to see if the conduct of the deceased measured up to these requirements of law.

The plaintiff testified that all of these through trains from New York to Florida go through Dillon and Latta; that she and her husband lived at Latta.

Mr. Thad Bethea testified that the railroad track approaching Dillon from the north is absolutely straight for a mile or more, and from the edge of the buildings on the east of Main

Street up to the railroad tracks there is nothing in the world to prevent anybody from seeing a train for a mile or more up the track, if they look.

Herbert Baxley, brother of the deceased, testified that he and his brother got together about an hour before the accident. During that hour they just walked up and down the street.

"A. He walked across and told me to wait at Anderson's Bank. * * * He said he would be back in 5 or 10 minutes. * * * I stood on the corner.

"Q. You saw him with your eyes? A. No, sir. Cars were passing by there and I didn't see nothing until the engine of the train came by. The train come by in less than three minutes after he left me. * * *

"Q. Did you see it before it got there? A. No, sir.

"Q. Hear it? A. No, sir.

"Q. Did you hear it give any signals at all? A. Not a bit in the world. * * *

"The Court: How close were you standing to the track? A. At Anderson's Bank."

It appears from the record that Anderson's Bank could not have been more than 60 feet from the track on which the train passed which struck the deceased. It is passing strange that a man at this bank did not see nor hear the train pass in a brightly lighted street, and with the headlight of the engine shining. This witness in reply to a question by plaintiff's counsel said: "I heard it as it passed."

N. Burnstein testified for plaintiff:

"Was with my wife and cousin from New York. Live at Dillon; stopped near the depot, almost to the house track, facing west—freight depot. At the time I stopped there I saw nothing. The train came in sight in about a minute or two after we stopped. We were about ten or twelve feet from the track. At that time I could see up the track all the way to the bend, that is better than a mile. I could see the crowd as the train reached the depot, in the headlight of the train. I could see the headlight plainly where I was. I saw the acci-

dent occur; we happened to look up. I said to my wife, 'Look', and just at that time there was a crowd going by and I saw this man coming towards me. The locomotive hit him. He had practically crossed the track, missed it by one step. You can see the headlights of a train almost around the bend if you are looking for them. I was watching that train approach. I saw the crossing flagman there. He came out there a little bit before the train came; the train was about a quarter of a mile away. He had a red light. I don't recall whether he blew a whistle.

"The Court: Did you hear the train coming? A. Yes, sir. I was looking for it.

"The Court: How far off could you hear it? A. Approximately a quarter of a mile.    *    *    *

"Q. If anybody had been looking for that train or had exercised due care to look for it, was there anything in the world to keep them from seeing it for a mile up the track? *    *    *    A. I don't believe there was anything there. *    *    *

"Q. Could anyone stopped at the track looking north see the train coming? A. Yes, sir; the headlights."

The watchman stood on the east side of the track. The watch tower is on the south side of Main Street. He came from the watch tower in front of me; it was to my left. The crossing man stands on Main Street and puts up a sign which stops the automobile traffic. On this night he walked to the middle of the street on the east side of the northbound track, waved his light and blew his whistle. At the time of the accident Baxley was not the only one crossing there, there was a crowd of people coming from the direction of Anderson's Bank. When the watchman went out there the traffic stopped.

H. C. Bethea, on cross examination:  ·

"Q. If the street were full of automobiles, he would have at least twenty feet in which he could see an approaching train light up the track? A. Yes, sir, if he was looking up the track."

Re-direct examination:

"Q. If a person leaving Anderson's Bank across the railroad, across the highway and railroad, were coming across the street, the next is Harrison and there was a lot of traffic going forward and backward at that place, could he have seen a train? A. He could be confused, of course if he got on the track looking for a train, he could probably see one."

The testimony adduced by plaintiff as to fog, dust, crowd of people, number of automobiles and blinding lights but emphasizes the more strongly the force of the law which requires that one in such circumstances must use such care in the exercise of his senses of sight and hearing as will protect him. The failure to do so amounts to negligence and contributory negligence of such gross nature as to bar recovery.

It does not need to analyze this evidence to agree with the trial Judge that the only reasonable conclusion deducible from the evidence is that Harvey Baxley was guilty of such contributory negligence and such gross contributory negligenct as a proximate cause of his injury, and death as will bar recovery.

The law is so well established that it is necessary to cite but little authority.

In the case of *Smith v. Southern Railway Company*, 7 S. E. (2d), 630, 631, filed March 14, 1940, this Court quoted from the statement of the Circuit Judge, who directed a verdict for the defendant, the following:

" 'I have endeavored to follow the testimony carefully and have listened to the very forceful argument of counsel, but, as I see it, the only reasonable inference to be drawn from the testimony is that the driver of the truck did not exercise the slightest degree of care, and is chargeable with gross negligence. He has not testified himself, but the testimony of Lonnie Poole and Gonzales Poole, who sat on the front seat with him, shows that he, and they, took no precautions whatsoever in approaching the crossing. All of them were familiar with the crossing and the train was running on

scheduled time. Now the testimony of Gonzales Poole is explicit to the effect that the side track, before entering upon the main line upon which the train was running, the train would have been visible for about a half mile, a remarkably accurate estimate, for the measurements show that it was about the distance from the crossing to the crest of the grade. My notes of the evidence show that Gonzales Poole said, "Yes, sir, if he had been looking, he could have seen it a half mile." ' * * *

"The occupants of the truck, knowing the very great difficulty of hearing the crossing signals, should have been more careful to look for the train. * * * "

We shall never know whether Baxley thought he could get across the track ahead of the train or whether he was so absorbed in thought that he did not see or hear the approach of the train, but it is undeniable that he walked twenty feet to try to cross at a public crossing in a well-lighted town ahead of a train running on a fast schedule, which did not stop at that place, all of which facts he is charged with knowing.

In the case of *Howell v. Southern Railway Company*, 192 S. C., 152, 5 S. E. (2d), 860, this Court said: " * * * Considering plaintiff's testimony alone, there are only two reasonable inferences to be drawn therefrom. One is that as plaintiff approached the crossing, within a clear view of the approaching train, that he wholly failed to look or listen before going upon the crossing. If this be true, in going upon the crossing without looking, under the circumstances here disclosed, he was guilty of gross contributory negligence as a matter of law. *Hicks v. Atlantic Coast Line Railway Company*, 187 S. C., 301, 197 S. E., 819; *Robison v. Atlantic Coast Line Railway Company*, 179 S. C., 493, 184 S. E., 96; *Bogan v. Southern Railway Company*, 179 S. C., 394, 184 S. E., 143. The only other reasonable inference to be drawn from the testimony is that plaintiff, as he approached the crossing, saw the train immediately approaching before going upon the track, and took the risk of beating it across by

jumping. It is equally as well settled in this State that when one undertakes to go over a crossing in front of an immediately approaching train, he is guilty of gross contributory negligence as a matter of law. *Drawdy v. Atlantic Coast Line Railway Company,* 78 S. C., 374, 58 S. E., 980; *Griskell v. Southern Railway Company,* 81 S. C., 193, 62 S. E., 205."

In *Wannamaker v. Southern Railway Company,* 191 S. C., 86, 3 S. E. (2d), 811, 815, this Court said: "It seems wholly unnecessary to cite further authorities. We hold it to be the settled rule in this State that if there is no other reasonable inference to be deduced from the evidence than that the plaintiff failed to exercise the slightest care for his own safety, he was guilty of gross negligence and it was the duty of the Court to direct a verdict, for the defendant. * * *"

Judge Stoll committed no error in the present case in granting the motion for nonsuit.

Judgment affirmed.

MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.

MR. JUSTICE STUKES did not participate.