15958

WRIGHT v. SOUTHERN RY. CO.
(43 S. E. (2d) 139)

*Messrs. Wolfe & Fort,* of Gaffney, for Appellant, cite: ▪

434

*Mr. Frank G. Tompkins,* of Columbia, and *Mr. Sam R. Watt,* of Spartanburg, for Respondent, cite: 

June 10, 1947.

TAYLOR, J.: This action was commenced in the Court of Common Pleas for Cherokee County for the recovery of actual damages alleged to have resulted from injuries sustained by the plaintiff in a railroad-crossing accident in the City of Gaffney, South Carolina, on the night of March 4, 1946. The case came on for hearing at the November, 1946, term of Court with the Honorable G. Duncan Bellinger presiding, who, at the conclusion of plaintiff's case, upon the motion of defendant's counsel, ordered a non-suit; and the plaintiff now appeals to this Court upon exceptions which raise several questions, the principal one being whether or not the Trial Judge, on the face of the record and the testimony erred in ordering the non-suit.

A review of the testimony shows that the plaintiff at the time of her injury was riding in an automobile driven by a Mr. Powell; that the two had originally planned to go to a tent show, but because of the cold and dampness of the night decided to return to her home; that on the way she suggested they go to an ice cream parlor first. They proceeded down Granard Street until reaching Birnie and along Birnie to the place where it crossed the tracks of the defendant railway company, there being two main line tracks (one for northbound traffic and one for southbound traffic) and

a third track being used as a sidetrack. Mr. Powell, the driver of the car, testified that he was familiar with the track crossing; that the night was damp and foggy, the windows of the car were up and that they and the windshield were blurred; that as he approached the crossing, he slowed down but did not stop; that he was looking in the direction in which he was driving; that although he looked both ways and there was no obstruction to prevent his seeing the oncoming train, he neither saw nor heard it before it was within a few feet of the car. He admitted proceeding around an automobile which had stopped immediately in front of him, and that had he stopped before entering upon the right-of-way of defendant, the accident would not have happened. He testified that trains passed quite often, and he knew this to be a dangerous crossing.

The plaintiff testified substantially to the same effect, stating that she was riding on the right side; that she heard no whistle and that the train was within 9 or 10 feet of them when she first became aware of it. She testified that she visited Gaffney frequently and knew of the crossing, and knew it was dangerous to cross there with mist blurring the windshield and windows as on this occasion. She also testified that she saw the car stopped there, and that they drove around it thinking it was backing up. She further testified that there was misty rain and fog and one could hardly see; that it was difficult to drive but they could see the lights of other cars and the street lights which were on at the time and running parallel to the tracks; that it was too cold to have the windows down, but had they been, the occupants of the car could have seen and heard much better; that the car slowed down but never stopped before entering the right-of-way of defendant.

The view both ways along defendant's right-of-way here is admittedly clear of obstructions and nothing to prevent the plaintiff from seeing the oncoming train except the weather conditions and the fog and mist on the windows and windshield of the car.

A portion of plaintiff's testimony appears as follows:

"Q. You saw the parked automobile there? A. Yes, it was backing up.

"Q. And you knew it was a dangerous crossing, did you not? A. Yes, because they didn't have any signs to show you when the train was coming.

"Q. And you knew that, did you not? A. Yes, sir.

"Q. And you knew your windows were cloudy? A. Yes, sir.

"Q. And you did not turn your windows down? A. No, sir.

"Q. And you knew it was dangerous to go across there with cloudy windows, did you not? (No answer.)

"Q. You knew that, did you not? Is that not true? (No answer.)

"Q. I say, that is true, is it not? A. I did not think of it at that time.

"Q. But you do know it was dangerous? A. Yes, sir.

"Q. And if you had turned your window down when they were cloudy, you admit you could have seen much better with it down? A. Yes, but it was too cold to have them down.

"Q. But when you approached a place of danger you could have seen much better if you had run the windows down? A. I suppose so.

"Q. Don't you know you could? A. Yes, sir.

"Q. And you never did bring the car to a stop? A. I don't remember anything else after I was struck.

"Q. Before you saw the train, you did not bring it to a stop? A. We slowed down.

"Q. But you never did bring it to a stop, did you? A. I don't think so.

"Q. Your windshield was blurred, too, was it not? A. Yes, sir.

"Q. And therefore you couldn't see as far down in the direction the train was coming as you could see if the windshield had not been blurred, could you? A. No, sir."

The driver testified in part as follows:

"Q. Now, going back to Exhibit 1—as soon as you get here you could see a train approaching? A. Yes, sir.

"Q. And you were approaching and knew the tracks were there? A. Yes, sir.

"Q. And you knew a train might be there at any time of day or night? A. I knew there might be.

"Q. Between this point where you entered Birnie Street and the railroad, there was a car on the right-hand side, was there not? A. Let me see what you mean—

"Q. After you turned into Birnie Street, you passed a car before you got to the tracks? A. Yes, sir.

"Q. And it never attracted your attention? A. Yes, it did.

"Q. And you did not look to the right or left? A. I looked to both.

"Q. And you saw no head light? A. That is right.

"Q. The train that hit you did have a head light? A. It might have had one, but I didn't see it. It might have burned out.

"Q. You didn't see it? A. No, sir.

"Q. When did you turn to the right to look? A. As soon as I got past that car.

"Q. And you could look at the point a number of feet before reaching the track, you could see the five blocks to the bridge? A. Yes, sir.

"Q. And the track is straight and you could even see a train beyond the bridge? A. I don't know.

"Q. And you could see five blocks, and you looked and saw no train? A. That is right.

"Q. And you heard no train? A. No, sir.

"Q. But there was absolutely nothing to keep you from seeing it, was there? A. No, sir.

* * * * *

"Q. And the windows were up and they were misty? A. Yes, sir.

"Q. And you knew that? A. Yes, sir.

"Q. And you knew that made it much more difficult to see a car or vehicle than if the glasses were clear? A. Yes, sir.

\* \* \* \* \*

"Q. But knowing your windows were misty, if you had stopped and run the glass down you could have seen the train? A. I could have seen it maybe, but I didn't see it.

"Q. What kept you from seeing it? A. It was dark and misty and you couldn't see any further than that door from you.

"Q. Then by all means, you should have stopped before going onto the tracks? A. I should have; yes, sir.

"Q. You admit that. And if you had done that, your car would not have been struck and this little lady would not have been injured at all? A. That is right."

Section 8377, Code of 1942, provides: "Injuries at crossings—penalty and damages—If a person is injured in his person or property by collision with the engines or any car or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by this chapter, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment, as provided in the preceding section, unless it is shown that in addition to a mere want of ordinary care the person injured, or the person having charge of his person or property, was at the time of the collision guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross wilful negligence or unlawful act contributed to the injury."

The common law defense of contributory negligence ██ is eliminated under this statute unless, in addition to mere want of ordinary care, it is shown that gross or wilful negligence or unlawful act, chargeable to person injured, contributed to injury. *Cook v. Atlantic Coast Line R. Co.,* 196 S. C. 230, 13 S. E. (2d) 1, 133 A. L. R. 1144.

Failure to give statutory signals does not relieve traveler of his duty to look and listen before going across railroad crossing. The traveler crossing railroad tracks is not bound to see or hear, but is bound to make all reasonable effort to see and hear that an ordinarily prudent man would make under like circumstances. Gross or wilful contributory negligence defeats recovery even though the railroad failed to give the statutory crossing signals. See *Himmons v. Southern R. Co.,* 138 S. C. 82, 136 S. E. 27; *Weaver v. Southern Ry. Co.,* 76 S. C. 49, 56 S. E. 657, 121 Am. St. Rep. 934; see also Ann. Cas. 1913-C, 1366; 13 A. L. R. 946; *Herbert v. Atlanta, etc., R. Co.,* 78 S. C. 537, 59 S. E. 644; *Baxley v. Atlantic Coast Line Ry.,* 193 S. C. 429, 8 S. E. (2d) 744.

"On reaching a railroad crossing, and before attempting to go upon the track, a traveler must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control must look and listen at a place and in a manner that will make the use of his senses effective." *Chisolm v. Seaboard Air Line Ry.,* 121 S. C. 394, 114 S. E. 500, 503.

The Trial Judge in his Order for nonsuit held that plaintiff and the driver of the car were engaged in a common enterprise; that the driver was not exercising the slightest care for his own safety or that of the plaintiff riding with him; that he was guilty of both gross contributory negligence and recklessness which amounted to wilfulness, without which this injury to plaintiff would not have occurred; and under the theory of joint enterprise this would defeat plaintiff's right to recover. He further held that the conduct of the driver under Section 8377, Code of 1942, commonly termed the "crossing statute," would prevent recovery by the plaintiff, in that there is no other reasonable inference from the testimony but that the driver of the car, being in charge of plaintiff's person at the time, failed to

exercise the slightest care for her safety and was, therefore, guilty of gross negligence. *Funderburke v. Powell,* 181 S. C. 412, 187 S. E. 742, and this Court finds no error therein.

Exceptions raise the question of error on the part of the Trial Judge in ruling that plaintiff and one Powell were engaged in a common enterprise, but even if this be true as contended by appellant, in view of the foregoing the result would be the same.

Therefore, it is the opinion of this Court that the Trial Judge committed no error when he granted defendant's motion for a nonsuit.

Another question raised is whether or not the Trial Judge committed error in ruling out of evidence a proffered photograph of the scene of the accident which plaintiff contends, although made some time later, gave a substantial illustration of the physical layout of the crossing and the street lights in the nighttime. This question must also be resolved against the appellant inasmuch as this Court agrees with the Trial Judge that the gross negligence of the driver, amounting to willfulness, defeated the right of the plaintiff to recover. The photograph, had it been admitted into evidence, could have made no difference in the outcome. All exceptions are, therefore, overruled; and the judgment affirmed.

Judgment affirmed.

BAKER, C. J. and FISHBURNE, STUKES and OXNER, J.J., concur.