Strafford,
Feb. 1, 1949. } No. 3800.

JOHN H. ROWE *v.* BOSTON AND MAINE RAILROAD.

*William H. Sleeper* and *Robert Shaw* (*Mr. Shaw* orally), for the plaintiff.

*Hughes & Burns* and *Donald R. Bryant* (*Mr. Bryant* orally), for the defendant.

JOHNSTON, J. The statute relating to the conduct of operators of motor vehicles at grade crossings is as follows: "Every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing . . . " R. L., c. 119, s. 18. If this conduct may be considered as constituting no more than due care on the part of such highway traveler, it at least is what has been called "the extreme limit" of such. *Frear* v. *Company*, 83 N. H. 64, 72.

For some thirty years prior to the accident the plaintiff had operated a store 200 feet west of the crossing. He handled express and mail from the trains. He had practiced civil engineering and surveying for 15 or 16 years. He was a good judge of time and was familiar with train schedules. While delivering grain at the Laton farm west of the crossing he heard a train but did not know whether it was the local or the express. He did know that if it was the local, the express was scheduled to follow in 10 minutes. He testified that it took him 8 to 10 minutes to get to the crossing from the Laton farm. He was familiar with the speed of the express both in miles per hour and in feet per second.

The plaintiff stopped 50 feet away from the eastbound track for four or five seconds to see if a train might be coming. Snow was falling and the wind was blowing so that he could not see more than 200-300 feet to his right along the tracks. He saw nothing and heard nothing of any train, although he knew that, if it was the local he had heard at the Laton farm, the express was about due.

The plaintiff testified that it took him from 10-30 seconds to go

from his stopping point to the place of the collision. His speed increased to 10-15 miles an hour and at his greatest speed he could have stopped, he said, in 12-14 feet. He was going slightly upgrade and had 1600 pounds of grain on the truck, so that the traction of the truck was favorable to stopping. All but 10 feet of the truck had cleared the eastbound track when the accident happened. From the time of starting up to the crash, the plaintiff did not look again to his right and the windows in the cab remained closed. He was struck by a train that he had neither seen nor heard.

At the crossing there was set an automatic signalling device on the south side of the road. It consisted of a wigwag and two series of lights, one for eastbound and the other for westbound traffic, and a bell. Although the signal was not operating at the time, the plaintiff knew that it was unreliable and did not depend upon it. The evidence most favorable to him was, as he expressed it, that he relied on his sight and hearing 55% and on the automatic signal 45%. "Assuming that he relied upon the crossing signals and the train's whistle to warn him and that none of these warnings were given, he did not place full reliance upon them." *Niemi* v. *Railroad*, 87 N. H. 1, 3. Partial reliance upon a signal that the plaintiff knew did not operate at times did not excuse him from using ordinary care in looking for the approaching train.

Although the plaintiff looked when he stopped, he knew that this was utterly inefficient so far as enabling him to see an express train going at 65-70 miles per hour more than 200-300 feet away that was at such a point that it was due to collide with him if he went forward as he did. It was as ineffectual as if he had looked for the train a quarter of a mile back. The rule that "if it may be found that he exercised some care the question whether it was due care is for the jury" (*Dennis* v. *Railroad*, 94 N. H. 164, 165), does not apply where the party claiming the benefit of the rule knew that his conduct was ineffective. He knew that the train was about due if the one he had heard was the local. After starting up he made no attempt to look or listen but took his chances in the storm. In short the plaintiff did something that he knew to be futile so far as warning him of the approaching train that would collide with him, and nothing that he thought to be useful. "Q. So that when you got down to the crossing knowing that a train had gone by while you were up to the Laton farm and not knowing whether it was a local or the express you knew that a train might be along there at any second? A. Yes. Q. And from the time you started your car in motion after you claim you

stopped it at point A-1 you knew that if that express was coming at the rate of seventy miles an hour or a hundred feet a second?· A. Yes. Q. You knew that when you looked at point A-1 if you did look that you could only see to your right two or three hundred feet? A. Yes. Q. You knew that you couldn't see beyond two or three hundred feet? Yes. Q. You knew if that express train was coming it would be coming very fast?· A. Yes. Q. At the rate of about a hundred feet a second? A. Yes. Q. You never once looked to your right again after you left the point at A-1, did you, up to the time you were struck? A. No. Q. Did you hear it before you were struck? A. No. Q. You drove onto that crossing and were struck by an express train which you claim you never saw? A. Yes. Q. And which you never heard? A. Yes." The plaintiff did not proceed cautiously over the crossing. *Niemi* v. *Railroad, supra; Collins* v. *Hustis,* 79 N. H. 446. By looking as he went along, he could have seen the train as it came into view in time to stop his truck. One who takes no thought for his safety does not use due care. *Robinson* v. *Railroad,* 85 N. H. 474.

Ordinarily, the stop 50 feet west of the crossing and the view might be found to be some evidence of due care because a person could see 1200 feet south along the tracks if weather conditions did not prevent. On the day of the accident, the visibility of the plaintiff was limited as he testified and he needlessly took his chance on proceeding without being able to see at the stop and without attempting to see thereafter. "It is plain that the plaintiff's car plunged into a fog bank which largely obscured the vision of the driver . . . with nothing to indicate what was in or beyond the fog . . . Such conduct cannot be reconciled with the exercise of due care on the part of the driver." *Tufts* v. *White,* 92 N. H. 158, 160.

The plaintiff's right to recover is not saved by the doctrine of the last clear chance. When the fireman first saw the truck it was about 250 feet away moving toward the crossing. There was no evidence that the train going at a speed of 65-70 miles per hour could have been slowed sufficiently in the distance of 250 feet after the engineer had been notified to have avoided the accident. Furthermore the fireman testified: "I took it that he was going to stop." He had the right to make this assumption. *Gates* v. *Railroad,* 93 N. H. 179, 181.

*Judgment for the defendant.*

All concurred.