244 A.2d 415.

JOSEPH FRANCIS *vs.* ATLANTIC TERMINALS, INC.
JOSEPH FRANCIS *vs.* WEYERHAUESER COMPANY.
PLYWOOD MART, INC. *vs.* ATLANTIC TERMINALS, INC.
PLYWOOD MART, INC. *vs.* WEYERHAUESER COMPANY.

JULY 18, 1968.

PRESENT: Roberts, C. J., Powers, Joslin and Kelleher, JJ.

JOSLIN, J.   These civil actions were brought against a parent corporation and its subsidiary to recover damages for injuries to person and property received by the plaintiffs in consequence of a collision between a New York, New Haven & Hartford Railroad Company freight train and a motor vehicle owned by the corporate plaintiff and operated by the individual plaintiff.   The site of the collision was the point where the defendants' private road crosses the railroad's 82 feet wide right-of-way.   The cases were tried to a judge and jury in the superior court.   After verdicts for the plaintiffs, the trial justice denied the defendants' motions for directed verdicts and granted their motions for new trials . Both the plaintiffs and the defendants appealed, the plaintiffs urging their objections to the granting of the motions for new trials and to certain evidentiary rulings, and the defendants pressing their objections to the denials of their motions for directed verdicts as well as to eviden-

tiary rulings. While we discuss only the individual plaintiff's action against each of the defendants, our decision applies as well to the cases brought by the corporate plaintiff.

On the morning of December 29, 1960, at about 9 o'clock, plaintiff left the public highway and drove his truck along Weyerhaueser Road, a private road owned by defendant Weyerhaueser which runs generally in a westerly direction from the public highway to defendants' terminal. It was the first time he had driven on that road. He was there to pick up an order of lumber which his employer had purchased. About 129 feet from the main-line crossing, he passed under an overhead blinking red light which was intended as a warning of the crossing to travelers. Still closer to the crossing was a signpost marked "Private Railroad Crossing." He observed the overhead light, and as he came to the crossing, he slowed almost to a stop and looked both ways before crossing the main line and a spur track. Then he drove through an opening in an 8 to 10 foot high picket fence which ran along the easterly boundary of that portion of defendants' premises where its terminal was located; passed through some open gates that looked to him "like a railroad crossing"; noticed the watchman's shack, adjacent to the gate to his left; proceeded to the warehouse where his truck was loaded with lumber; and, about three quarters of an hour later, began his return trip. By then, he testified, the snow, which had started falling while he was loading, "was coming down heavily" and there was a ground accumulation of about one half inch.

Leaving the terminal premises, he retraced his inbound route and came first to the shack and then to the open gates. Those gates were wholly on and within the defendants' premises, and were painted black and white. Each consisted of a single bar with a leg and was equipped with reflectors. They looked like railroad crossing gates. Not-

withstanding their appearance, they had never been either attended by a guard or closed as trains approached, but instead were kept open during defendants' working hours and closed on nights and weekends. Close by the gates was the watchman's shack which was used by a security guard during non-operating hours. The plaintiff, of course, was unaware of the use to which gates and shack were put.

As he neared the gates, he came almost to a complete stop, and then, proceeding very slowly and in first gear, passed through the open gates, and on through the picket-fence opening. Although his view of any approaching train was, so he said, interfered with by the picket fence, there is no question that his vision was unobstructed once he passed that fence. Between that point and the main line, about 47 feet to the east, he proceeded very slowly, he said, looking both right and left but seeing nothing. While his wipers left his windshield clear so that he could see "very clearly up ahead," the snow was accumulating on his closed left side window and he had difficulty seeing through it. Then, claiming that he again both looked to his right and to his left and listened without either seeing or hearing anything, he started to cross the track. Almost immediately he was struck by the slowly moving train which was then proceeding with headlights on, whistle blowing, and full emergency brakes applied. As a result, the motor vehicle was damaged and plaintiff sustained serious physical injuries.

We discuss only defendants' objections to the trial justice's failure to direct verdicts because we believe that the evidence, even when looked at in the light most favorable to plaintiff as it must be on a motion for direction, fails to disclose that he exercised due care for his own safety.

Ordinarily, unless the undisputed facts and the legitimate inferences fairly deducible therefrom make it clearly appear that a person of ordinary prudence would have pursued a

different course, the question of a plaintiff's negligence is properly left to the jury. *Berman* v. *King Union Co.*, 80 R. I. 181, 94 A.2d 428. Only rarely do we find a case where the question is one of law. *Taglione* v. *Tourtellot & Co.*, 100 R. I. 292, 214 A.2d 853; *Reek* v. *Lutz*, 90 R. I. 340, 158 A.2d 145. This is such a case.

The standard of care required of a traveler as he approaches a railroad crossing is well settled. It is a place of great danger and the prudent traveler does not attempt to cross without first looking to ascertain whether he may safely do so. *Goodman* v. *New York, N. H. & H. R.R.*, 84 R. I. 240, 123 A.2d 135. Although an early case (*Wilson* v. *New York, N. H. & H. R.R.*, 18 R. I. 491, 29 A. 258, 18 R. I. 598, 29 A. 300) held that reliance upon an open crossing gate relieved the traveler of the obligation of looking and listening as he approached a crossing and that evidence of open crossing gates would leave the question of contributory negligence for the jury, that rule was later modified, and the principle of exclusive reliance on open gates no longer obtains. *Geoffroy* v. *New York, N. H. & H. R.R.*, 42 R. I. 20, 26, 104 A. 883, 886. The rule now is that the traveler, notwithstanding the gates are open, should "* * * use his senses before going on to the railroad track," and if he is to be reasonably prudent, he should look and listen and take such other precautions for his own safety as the particular circumstances may dictate. *Geoffroy* was followed in *Lemieux* v. *Leonard Const. Co.*, 73 R. I. 338, 56 A.2d 189. Moreover, it will avail him nothing to say that he looked and listened at a point where if he had looked and listened, he would have seen and heard an approaching train in ample time to stop before entering upon the crossing. *Kennedy* v. *New York, N. H. & H. R.R.*, 43 R. I. 358, 112 A. 429.

The plaintiff does not question the standard, but argues that inasmuch as heavy snow restricted his vision to the

left, it was for the jury to decide whether ordinary prudence and caution for his own safety dictated that he do more than he did. To be sure, he placed some reliance on the open gates, he was proceeding slowly, and he claims to have looked both left and right even though, admittedly, he could not see through the left window because of the heavy snow which was blowing against it. He did not, however, lower the window. To expect him to do so, he argues in his brief, would have been utterly unreasonable for, if he had lowered the window, the snow would have blown in his face. That may well be, but, if he had properly been concerned for his own safety, the limitations imposed by the atmospheric conditions upon his ability to see and hear dictated that he do something more than he did in order to ascertain if it was safe to cross. To rely upon looking when he could not see and listening when he could not hear was to enter blindly upon the crossing. One who thus takes his chances in a storm is contributorily negligent as a matter of law. *Ranstrom* v. *Oregon Short Line R.R.*, 18 F. Supp. 256; *Sheehan* v. *Chicago N.S. & M. R.R.*, 269 Ill. App. 477; *Rowe* v. *Boston & M. R.R.*, 95 N.H. 371, 64 A.2d 6; *Yolton* v. *Pennsylvania R.R.*, 368 Pa. 429, 84 A.2d 501; *Papageorge* v. *Boston & M. R.R.*, 317 Mass. 235, 57 N.E.2d 576; *Nashville C. & St.L.Ry.* v. *Barnes*, 177 Tenn. 690, 152 S.W.2d 1023; *Louisiana & Arkansas Ry.* v. *Jackson*, 95 F.2d 369; *Wright* v. *Southern Ry.*, 210 S.C. 432, 43 S.E.2d 139. *Contra, Schilawske* v. *Detroit, J. & C. Ry.*, 206 Mich. 214, 172 N.W. 369. See generally Annot. 42 A.L.R.2d 13.

All we decide in this case is that to have looked and listened when looking and listening were ineffective by reason of inclement weather was not enough to get the plaintiff's case to the jury. Common prudence dictated that he take other reasonable measures in order to ascertain whether it was safe to cross.

· For the reasons indicated, each case is remitted to the superior court where judgment shall be entered for the defendant.

Motion for reargument denied.

*Aram Arabian* and *Robert Hogan,* for plaintiffs.

*Joseph Cavanagh* of Higgins, Cavanagh & Cooney, *Bruce Tucker* of Counsel, for defendants.